John Andrew WARD *v.* STATE of Arkansas

CA CR 82-186                    649 S.W.2d 849

Court of Appeals of Arkansas
Opinion delivered May 11, 1983

*Ken Cook,* Deputy Public Defender, for appellant.

*Steve Clark,* Atty. Gen., by: *Velda P. West,* Asst. Atty. Gen., for appellee.

DONALD L. CORBIN, Judge. Appellant, John Andrew Ward, was charged by information with the offenses of burglary and theft of property. He was also charged with being an habitual criminal. A Crittenden County Circuit Court jury found him guilty and assessed punishment for a term of thirty years in the Arkansas Department of Correc-

tion for the offense of burglary and ten years for the offense of theft of property with the sentences to run concurrently. We affirm.

The only question presented by this appeal is whether the evidence is sufficient to sustain a conviction of burglary. Appellant relies on the case of *Norton* v. *State,* 271 Ark. 451, 609 S.W.2d 1 (1980), for the proposition that "the prosecution must prove each and every element of the offense of burglary beyond a reasonable doubt and cannot shift to the defendant the burden of explaining his illegal entry by merely establishing it." This ruling was founded on the decision of *Mullaney* v. *Wilbur,* 421 U.S. 684 (1975), wherein the U.S. Supreme Court invalidated a Maine homicide statute which implied malice aforethought in any criminal prosecution of an intentional homicide unless the defendant established by the preponderance of the evidence that the homicide was committed in the heat of passion. The Arkansas Supreme Court quoted from *Patterson* v. *New York,* 432 U.S. 197, 215 (1977), a case which was decided subsequent to *Mullaney, supra,* as follows:

> *Mullaney* surely held that a State must prove every ingredient of an offense beyond a reasonable doubt, and that it may not shift the burden of proof to the defendant by presuming that ingredient upon proof of the other elements of the offense. . . . Such shifting of the burden of persuasion with respect to a fact which the State deems so important that it must be either proved or presumed is impermissible under the Due Process Clause.

The Arkansas Supreme Court then ruled that "the well established principles enumerated by the United States Supreme Court in *Patterson* and *Mullaney* are controlling upon us today. Accordingly, we hold a specific criminal intent, which is an essential element of the crime of burglary, cannot be presumed from a mere showing of illegal entry of an occupiable structure."

We think it is important to note that Justice Mays distinguished the Court's decision in *Norton, supra,* from

that of *Grays* v. *State*, 264 Ark. 564, 572 S.W.2d 847 (1978), as follows:

> We are not unmindful that our decision in *Gray* v. *State*, 264 Ark. 564, 572 S.W.2d 847 (1978), may suggest that the specific intent requirement of burglary may be presumed from the unexplained illegal entry of an occupiable structure. In *Gray*, however, the defendant fled, eluding the police officers, when his presence was discovered in the occupiable structure. We have consistently suggested that the flight of an accused to avoid arrest is evidence of his felonious intent.

Thus, the issue squarely before us is whether or not reasonable minds could, after finding from the evidence that a person was in possession of recently burglarized property, infer beyond a reasonable doubt that that person made an unauthorized entry of the structure from which the property was taken with an intent to commit a theft or felony.

If the State had established appellant's guilt solely on the basis of his possession of recently burglarized property, reversal would be mandated. However, the State may demonstrate by additional empirical evidence that a presumed fact is more likely than not to flow from the proven fact on which it is made to depend. For example, before a jury can be instructed that if it finds one proven fact, i.e., possession of property recently stolen in a burglary, the inference must be one which reasonable minds beyond a reasonable doubt could draw from the proven fact.

In the instant case, the State put on additional empirical evidence. It may well have been circumstantial evidence; however, a jury is quite capable of sifting through the evidence to arrive at the truth. All of the elements of an offense may be shown by circumstantial evidence. *Smith* v. *State*, 264 Ark. 874, 575 S.W.2d 677 (1979). Evidence that is circumstantial is not insubstantial. The law makes no distinction between direct evidence and evidence of circumstances from which the fact may be inferred. *Williams* v. *State*, 258 Ark. 207, 523 S.W.2d 377 (1975). When circumstantial evidence rises above suspicion and is properly

connected, and, when, viewing that evidence in the light most favorable to the State, the jury is not left to speculation and conjecture alone in arriving at its conclusion, it is basically a question for the jury to determine whether the evidence excludes every other reasonable hypothesis. It is only every other reasonable hypothesis, not every hypothesis, that must be excluded by the evidence. *Upton* v. *State*, 257 Ark. 424, 516 S.W.2d 904 (1974).

The reasonable doubt standard is the proper standard at the trial court level but it is not the proper standard on appeal. This point was recently clarified in *Cassell* v. *State*, 273 Ark. 59, 616 S.W.2d 485 (1981), where the Court stated:

> . . . although the jury should be instructed, as it was here, that circumstantial evidence must be consistent with the guilt of the defendant and inconsistent with any other conclusion, AMCI 106, that is not the standard by which we review the evidence. Our responsibility is to determine whether the verdict is supported by substantial evidence, which means whether the jury could have reached its conclusion without having to resort to speculation and conjecture. *Brown* v. *State*, 258 Ark. 360, 524 S.W.2d 616 (1975); *Abbott* v. *State*, 256 Ark. 558, 561-562, 508 S.W.2d 733 (1974). The jury must be convinced of the accused's guilt beyond a reasonable doubt, *but we, not having had the advantage of seeing and hearing the witnesses,* are guided by the substantial evidence rule. *Graves & Parham* v. *State*, 236 Ark. 936, 370 S.W.2d 806 (1963). (Emphasis added).

Substantial evidence has been defined as evidence which is of sufficient force and character that it will with reasonable and material certainty and precision, compel a conclusion one way or the other; it must pass beyond suspicion and conjecture. *Pickens* v. *State*, 6 Ark. App. 58, 638 S.W.2d 682 (1982). We find that the evidence adduced at trial in the instant case, when viewed in the light most favorable to the State, rises above mere suspicion and conjecture.

The evidence most favorable to the State discloses that sometime between 5:00 p.m. on Friday, February 5, 1982 and Monday morning, February 8, 1982, the bandroom at Wonder Junior High School in West Memphis, Arkansas, was broken into. Several musical instruments were stolen. Sergeant Moss of the Memphis Police Department testified that he was called to Moore's Pawnshop on Monday morning, February 8, 1982. He asked appellant for credentials or proof of ownership of the musical instruments which appellant was attempting to pawn. Appellant first stated that he belonged to a band which had disbanded and that the instruments belonged to him. Sergeant Moss allowed appellant to go to his automobile to retrieve his credentials. Appellant got in his automobile and sped away by going in the wrong direction down a one-way street. Sergeant Moss was able to get a partial license number of the automobile and reported it to the West Memphis Police Department. The police later found the automobile in which appellant fled at appellant's home with the license tag removed. Sergeant Moss identified photos of both appellant and the automobile. Officer Mike Carter of the West Memphis Police Department arrested appellant and testified as to appellant's responses during interrogation. Officer Carter testified that appellant advised him that he had not gone to Moore's Pawnshop in Memphis, Tennessee, on February 8, 1982, to pawn musical instruments. He stated that appellant told him he was at work on February 8, 1982. However, the payroll clerk of appellant's employer testified that appellant was not at work on February 6, 7, or 8. The prosecution established that three of the four instruments which appellant attempted to pawn had serial numbers matching those stolen from the bandroom at Wonder Junior High School.

Moreover, appellant testified at trial that he had in fact attempted to pawn the musical instruments at Moore's Pawnshop in Memphis on the morning of February 8. This was in contradiction to the testimony of Officer Carter. Appellant testified that he and two friends found the instruments near a dumpster around 3:45 p.m. on Friday, February 5. The time appellant allegedy came into possession of the instruments occurred before the bandroom was

locked for the weekend and before the burglary took place. The following testimony was elicited from appellant by the prosecution:

> Q. Tell me why you even felt the urge, the desire or the need to call the police department to find out if they had a report of stolen instruments if you didn't think or know and believe and even participate in it yourself?
>
> A. Well, I didn't want to get involved in no kind of stolen merchandise, that's why.
>
> Q. You thought maybe it was stolen, didn't you, Mr. Ward . . .
>
> A. . . . the police did not have no report on that it was stolen.
>
> Q. When they didn't have a report, that made it all well and good. So, you went over and told the man it's yours, and you lied to him.
>
> A. Yes, sir.
>
> Q. And when you got caught and you didn't have any credentials, you hot-footed it out of there, didn't you?
>
> A. Yes, sir.
>
> Q. Then you lied on the 19th of February when you were first confronted about it, didn't you, not once but two or three times?
>
> A. No, sir.
>
> Q. You told Officer Carter that you hadn't even been to Memphis, didn't you?
>
> A. I told him that.
>
> Q. That was a lie.

A. Yes, sir.

Appellant's argument that the trial court erred in denying his motion for a directed verdict as the evidence was insufficient to convict him of burglary is without merit. A directed verdict is proper only when no fact issue exists and on appeal we review the evidence in the light most favorable to appellee and affirm if there is any substantial evidence to support the verdict. *Balentine* v. *State*, 259 Ark. 590, 535 S.W.2d 221 (1976). It is clear from the record that there were issues of fact for the jury at the close of the State's case-in-chief and the trial court properly denied the motion. In addition, we find that there is substantial evidence to support the verdict of the jury. Evidence of flight after the commission of a crime is generally admissible even though it does not occur immediately after the crime. *Murphy* v. *State*, 255 Ark. 90, 498 S.W.2d 884 (1973). We believe that the evidence of appellant's flight from Sergeant Moss, his contradictory statements to the police officers about his ownership of the stolen property as well as his statement to one of the officers that he was not present at Moore's Pawnshop on Monday, February 4, and his own testimony in reference as to how he came into possession of the property constitute substantial evidence supporting the jury's verdict. While there was no direct evidence which placed appellant inside the burglarized building, the evidence is clear that the building was unlawfully entered and the articles unlawfully taken from it. The State was able to establish through circumstantial evidence appellant's connection to the burglary. This was done with additional empirical evidence amounting to more than appellant's mere possession of recently burglarized property. Accordingly, we affirm.

COOPER, GLAZE and CLONINGER, JJ., dissent.

JAMES R. COOPER, Judge, dissenting. I respectfully dissent from the majority opinion. In my view, the majority opinion in this case opens the door, and even encourages, overcharging by prosecuting attorneys. Under the facts of this case, and the decision of the majority, virtually any individual who has committed the crime of theft by receiv-

ing could also be charged and convicted of burglary, at least if the burglary took place within two or three days prior to his arrest for possession of the recently stolen property. The majority opinion concedes that the State must prove every element of the offense of burglary and then proceeds to allow the State to fail to do exactly that. There is not one scintilla of evidence in this record, and none is mentioned by the majority, that allows even a reasonable inference that the appellant ever set foot in Wonder Junior High School. The appellant was found in possession of items which had recently been stolen from the Junior High School, and he failed to satisfactorily explain his possession of those items.

The fact that the appellant lied to the officers about the source of the band instruments, and the manner by which he got possession of them, is one of the factors to be considered in determining guilt or innocence of a charge of theft by receiving under Ark. Stat. Ann. § 41-2206 (Repl. 1977).

The majority opinion cites various rules regarding the use of circumstantial evidence and uses these rules to support its conclusion that there is sufficient evidence to find the appellant guilty. What the majority opinion overlooks is that there is no evidence, circumstantial or otherwise, except for the possession of the recently stolen property, which in any way connects the appellant to the crime of burglary. In order to prove burglary under Ark. Stat. Ann. § 41-2002 (Repl. 1977), the State must prove that the appellant entered or remained unlawfully in an occupiable structure with the purpose of committing an offense punishable by imprisonment. It is that illegal entry that is not supported by the evidence in the case at bar.

I simply cannot agree with the majority opinion that there was substantial evidence to support the jury's verdict. The majority points out that "[e]vidence of flight after the commission of a crime is generally admissible even though it does not occur immediately after the crime." That general proposition is true, but the appellant's flight from Sergeant Moss is as consistent with avoiding arrest on the charge of theft by receiving as it is burglary. I fail to see how his fleeing the pawn shop supports a conclusion that sometime during

a two or three day period prior to that time he entered the school with the intent to commit a theft.

The majority concedes that there was no direct evidence that the appellant ever entered the burglarized building, but somehow bootstraps itself into supporting the appellant's conviction by mentioning that "the building was unlawfully entered and the articles unlawfully taken from it". Everyone concedes that the building was entered and the articles taken, but it was for the State to prove that the appellant was the individual who entered the building. The State failed to do so.

I respectfully dissent.

CLONINGER, J., and GLAZE, J., join in this dissent.