Marvin STOUT *v.* STATE of Arkansas

CR 90-213                                        804 S.W.2d 686

Supreme Court of Arkansas
Opinion delivered February 25, 1991
[Rehearing denied March 25, 1991.]

*Terry Crabtree*, for appellant.

*Ron Fields*, Att'y Gen., by: *John D. Harris*, Asst. Att'y Gen., for appellee.

STEELE HAYS, Justice. Marvin Stout was arrested at the Spot-Not Car Wash in Rogers, Arkansas. An inventory of his effects led to the discovery of break-ins at two nearby schools. Marvin Stout was charged with breaking or entering, two counts of burglary and theft of property. A charge of second degree escape was later added. Tried as an habitual offender, Stout was convicted and sentenced to fifty-five years in the Arkansas Department of Correction. On appeal, Stout maintains the trial court erred in refusing to grant a motion to suppress evidence and that the state's proof did not sustain the verdict. We affirm in part and reverse and dismiss in part.

## I

## MOTION TO SUPPRESS

There are two coin machines at the Spot-Not Car Wash—a coin machine on the south side of the building and a machine for making change located within a locked wooden cabinet. Shortly after 3:00 a.m. on March 9, 1989, a burglar alarm connected to the cabinet began sounding. Officer Helms estimated that he arrived at the scene in less than a minute. Helms observed a white male wearing a brown jacket standing in one of the bays. Helms drove past the car wash, turned off his lights and circled back where he stopped the individual, who was by then walking away from the car wash. The man identified himself as Marvin Stout, and explained that his car had broken down in Eureka Springs

and he was walking home to Springdale. Helms noticed that Stout's jacket pockets were bulging and a pat-down produced a large amount of currency and coin, two screw drivers and a small vise grip.

Another officer had arrived and their investigation revealed that the right side of the coin machine had scratch marks and that the lock on the doors of the cabinet containing the change machine had been pried off, but the machine itself was not disturbed. An assortment of hand tools, a black pouch and flashlight were nearby and shoe prints in the snow around the machines were similar to those worn by Stout.

At headquarters an inventory search produced, in addition to the screw drivers and vise grip, some $25 in quarters, some $13 in other coins, fifty one-dollar bills, other bills of larger denomination, a dozen postage stamps, an assortment of coin roll papers, two keys, one of which was labelled "Good Teacher," and two fudge brownies in wrappers labelled "Little Debbies." In all, the cash in Stout's possession totalled $121.76.

## The Initial Stop

Appellant maintains that his initial stop at the car wash was not based on a reasonable suspicion, nor were there specific, articulable facts from which Sgt. Helms could reasonably infer that appellant was armed and, hence, there was no basis for a "pat-down." Urging that these preliminary steps were improper, Stout insists the items were seized in violation of the Fourth Amendment.

Rule 3.1 of the Arkansas Rules of Criminal Procedure permits an officer to stop and detain any person the officer reasonably suspects may be engaged in criminal conduct either to obtain identification or to determine that the person's conduct is lawful. A.R.Cr.P. Rule 2.1 defines "reasonable suspicion" as "a suspicion based on facts or circumstances which of themselves do not give rise to the probable cause requisite to justify a lawful arrest, but which give rise to more than a bare suspicion; that is, a suspicion that is reasonable as opposed to an imaginary or purely conjectural suspicion."

Reasonable suspicion entails a consideration of the total circumstances and the existence of particularized, specific

reasons for a belief that the person may be engaged in criminal activity. *Hill* v. *State*, 275 Ark. 71, 628 S.W.2d 285 (1982). That standard is easily met in this case: Helms was responding to a burglar alarm at 3:00 a.m. and observed Stout, who had no car, standing in the car wash. Arguably, that alone justifies an investigative stop under the rational of *Terry* v. *Ohio*, 392 U.S. 1 (1968). But there were additional factors: Stout's explanation that he was walking home from Eureka Springs was not merely implausible, it was demonstrably untruthful since he was walking in the opposite direction from Springdale when he was stopped by Sgt. Helms. The other circumstances, already noted, give further emphasis to the grounds for the stop.

### The Frisk

■ When a lawful stop occurs, the police are permitted to search the outer clothing of an individual and the immediate vicinity for weapons if the facts available to an officer would warrant a person of reasonable caution to believe that a limited search was appropriate. *Webb* v. *State*, 269 Ark. 415, 601 S.W.2d 848 (1980). A.R.Cr.P. Rule 3.4. If for no other reason, Helms was justified in conducting a limited search to determine that the obvious bulge in Stout's jacket was not a weapon.

### The Warrantless Arrest

A law enforcement officer may arrest a person without a warrant if the officer has reasonable cause to believe that person has committed a felony. A.R.Cr.P. Rule 4.1. A determination of probable cause to arrest exists where a reasonable ground of suspicion is supported by circumstances sufficiently strong to warrant a cautious person to believe the suspect committed a crime yet the degree of proof that would sustain a conviction is not required. *Ross* v. *State*, 300 Ark. 369, 779 S.W.2d 161 (1989). The burden of demonstrating error rests on the appellant while all presumptions favor the trial court's ruling on the legality of the arrest. *Id.*

■■ In the present case, the search produced two screw drivers, a vise grip, and an abundance of coin and currency. When asked for an explanation, Stout gave an account which was not credible. Officer Helms had reasonable cause to suspect Stout could be involved in criminal conduct based on the facts then

available to him and, therefore, had authority to arrest without a warrant. Too, pursuant to A.R.Cr.P. Rule 12.1(d), a police officer who makes a lawful warrantless arrest is authorized to search the person or property of the accused to look not only for weapons but also for the fruits and instrumentalities of crime. Even if the fruits and instrumentalities of any other crime are found, those are properly seized. *Holmes* v. *State*, 262 Ark. 683, 561 S.W.2d 56 (1987). Thus, all evidence collected at the scene was also admissible.

### The Inventory Search

"It is now beyond serious dispute that inventory searches are recognized as an appropriate and necessary exception to the warrant requirement of the Fourth Amendment." *Thomas* v. *State*, 303 Ark. 210, 214-215, 795 S.W.2d 917, 918 (1990) [citing *Colorado* v. *Bertine*, 479 U.S. 367 (1987)]. The inventory is for the mutual protection of the suspect and the police. *Id.*

Here, where both the investigative stop and frisk, plus the warrantless arrest, were reasonable, it was entirely proper for police officers to inventory Stout's personal property. The evidence procured from this well established procedure was properly admitted.

## II

### THE SUFFICIENCY OF THE EVIDENCE

Stout was convicted of breaking or entering the Spot-Not Car Wash, two counts of burglary of the Southside Kindergarten Center and of Rogers High School, escape in the second degree and violation of the Habitual Offenders Act. Stout maintains there was insufficient evidence produced to support his convictions because there was no evidence that entry had been gained into either of the coin machines and the only connection between Stout and the burglar alarm was his presence at the car wash.

### Breaking or Entering

Appellant argues, first, that entry was never achieved into the coin machine at the south automatic car wash bay and was never even attempted into the change machine inside the cabinet and, second, the circumstances did not establish by substantial evidence that it was the appellant who had been tampering with

the machines at the car wash.

Taking the arguments in reverse order, the appellant was discovered at 3:05 a.m. at the Spot-Not Car Wash within sixty seconds of the sounding of a burglar alarm triggered by the entry into the wooden cabinet. Appellant gave no explanation for his presence at the car wash without a car at that unusual hour, except that his car had broken down in Eureka Springs and he was walking home. Tools useable for burglary were found on the ground and shoe prints similar to the shoes worn by appellant were found in the snow near the tools and by the money machines. Appellant had some $38 in nickels, dimes and quarters in his pockets, as well as two screw drivers and other articles shown to have been stolen earlier at nearby schools. Finally, appellant gave the police an implausible explanation for his presence at the car wash. We regard these circumstances as sufficient to support an inference that the appellant was engaged in breaking into the machines when apprehended by the police.

Turning to the issue of entry, Ark. Code Ann. § 5-39-202(a) (1987) provides:

> A person commits the offense of breaking or entering if for the purpose of committing a theft or felony he enters or breaks into any building, structure, vehicle, vault, safe, cash register, money vending machine, product dispenser, money depository, safety deposit box, coin telephone, coin box, or other similar container, apparatus, or equipment.

We agree with appellant that there was no evidence that either the change machine inside the cabinet or the coin machine on the south wall had been broken into. Officers Helms and Mallory testified as to what they found at the scene, but neither supplied evidence of entry. The sum and substance of their testimony was that the cabinet door lock was pried loose and the coin machine bore scratch marks. The parties stipulated to the fact that the left side of the coin machine was bent outward, but there is no indication that that stipulation, which seems to have been related to the suppression hearing, was presented to the jury.

We believe from the wording of the statute a violation occurs when a container of the sort described in the statute is sufficiently broken or altered so that the contents or inner works of

the device become accessible to entry of any kind. Whether coins or money are actually removed is irrelevant. We do not regard mere scratch marks on a machine as constituting a violation. Even when we give the evidence its highest and strongest probative force there is nothing from which to conclude that a breaking had occurred cognizable under the statute.

## The Burglaries

To sustain a conviction for burglary, the state must present evidence that a person "enters or remains unlawfully in an occupiable structure of another person with the purpose of committing therein any offense punishable by imprisonment." Ark. Code Ann. § 5-39-201 (1987). While conceding that Rogers High School and Southside Kindergarten Center are "occupiable structures" within the meaning of the statute, Stout argues that the state failed to prove that (1) he entered the buildings, and (2) he possessed the requisite mental state.

The inventory of Stout's personal property, including a "Good Teacher" key ring, led the police officers to inspect nearby schools. Upon arrival at Rogers High School, Officer Riggs found the cafeteria door had been broken into and the door plate on the boiler room door had been removed. The south doors to the Kindergarten Center had been broken into and footprints, with the same tread pattern discovered at the car wash, were found outside the door. That door was open. Inside the building the officers observed pry marks on both doors to an office. Desk drawers were open and items were scattered over the floor. In the secretary's office a change drawer was open and a metal money box in the storage room was empty. Ray Roney, a representative of the schools, identified the screw drivers found on Stout as belonging to him. Roney identified the "Good Teacher" key ring as the key to the school's Coke machine. Karen Bennham, the elementary principal at the Kindergarten Center, testified that between $125 and $130 was missing from the secretary's desk. Jimmy Masner, head custodian of Rogers School System, testified that "Little Debbie" cookie wrappers were lying on the cafeteria floor after the break-in, yet the floor was clean when he left work that evening. The cookie wrappers were identical to the wrapper of the brownies found on Stout.

We have consistently held that possession of recently

stolen property is *prima facie* evidence of guilt of burglary of the party in whose possession the property is found, unless it is satisfactorily accounted for to the jury. *Lane* v. *State*, 288 Ark. 175, 702 S.W.2d 806 (1986); *Jacobs* v. *State*, 287 Ark. 367, 699 S.W.2d 400 (1985); *Ward* v. *State*, 280 Ark. 353, 658 S.W.2d 379 (1983); *Williams* v. *State*, 258 Ark. 207, 523 S.W.2d 377 (1975). This is so even if there is no direct evidence of breaking or entering by the appellant, *Jacobs*, *supra*, and when there is no other evidence to show the appellant had committed the crimes with felonious intent. *Williams* v. *State, supra.*

> Such evidence raises no presumption of law as to guilt of the accused, but only warrants an inference of fact, of more or less weight according to the particular circumstances of each case, which the jury may draw therefrom as to his guilt. It makes a question for the jury, and is sufficient to warrant conviction where it induces in the minds of the jury a belief, beyond a reasonable doubt, of the guilt of the accused.

*Lane* v. *State* at 178; 702 S.W.2d at 807.

There was substantial evidence in this case from which a jury could reasonably infer that Stout was guilty.

### Second Degree Escape

Stout maintains the state failed to prove that Benton County Jail is a correctional facility within the meaning of our Second Degree Escape Statute. Ark. Code Ann. § 5-54-101(1) (1987) defines a correctional facility as "any place used for the confinement of persons charged with or convicted of an offense or otherwise confined under court order." A jail is defined as ". . .a prison; a building designated by law, or regularly used, for the confinement of persons held in lawful custody. . ." *Black's Law Dictionary* 748 (5th ed. 1979).

■ There was testimony by law enforcement officers that Stout was an inmate of the Benton County Jail. On June 26, 1989, he escaped through an outdoor recreation room, and he was not lawfully released from custody. There was also testimony by the officer who took him back into custody and returned him to the jail. While the state did not put on specific testimony that the Benton County Jail was a correctional facility, logic and common

sense fully sustain an inference to that effect.

For the reasons stated, the judgment is reversed as to the conviction for breaking or entering and that charge is dismissed; with that exception the judgment and conviction are affirmed.