2009 Ark. App. 181

**Christopher Boyd MATHIS, Appellant,**

v.

**STATE of Arkansas, Appellee.**

**No. CA CR 08–634.**

Court of Appeals of Arkansas.

March 11, 2009.

er, unrelated conviction. Mathis does not challenge the revocation of his probation other than by challenging the convictions. The court sentenced Mathis to 121 months' imprisonment, running all of his sentences concurrently.

Mathis's sole argument for reversal, a sufficiency challenge, lacks merit. *Navarro v. State*, 371 Ark. 179, 186–87, 264 S.W.3d 530, 535–36 (2007); Ark.Code Ann. §§ 5–36–103, 5–39–201 (Supp.2007 & Repl. 2006). In so holding, we view the evidence supporting the convictions in the light most favorable to the State and affirm if substantial evidence supports the convictions. *Navarro*, 371 Ark. at 186, 264 S.W.3d at 535. "[C]ircumstantial |₂evidence may provide a basis to support a conviction, but it must be consistent with the defendant's guilt and inconsistent with any other reasonable conclusion. Whether the evidence excludes every other hypothesis is left to the [fact-finder] to decide." *Ibid.* at 186–87, 264 S.W.3d at 536. On appeal, however, we must determine whether the fact-finder resorted to speculation or conjecture in reaching his decision. *King v. State*, 100 Ark.App. 208, 213–15, 266 S.W.3d 205, 206–07 (2007) (supplemental opinion denying rehearing).

The facts of the case were these. During the first week in May of 2007, Mathis and his friend and housemate, Tyler Blackwell, went to Heath Coit's house trying to sell Coit a gun. A few days later, on May 5, 2007, Coit discovered that two jars of coins were missing from his house. Coit testified that no one else had been to his house between Mathis's and Blackwell's visit and his discovery that the jars of coins were missing. During that same period of time, Coit passed a person that he thought was Mathis one morning on the highway, and Mathis was headed in the direction of Coit's rural home. Coit said that he always kept his doors locked and

Kinslow Law Firm, by: Chris H. Kinslow, Malvern, for appellant.

Dustin McDaniel, Att'y Gen., by: Eileen W. Harrison, Ass't Att'y Gen., for appellee.

WAYMOND M. BROWN, Judge.

|₁After a bench trial, the circuit court convicted Christopher Mathis of two counts of residential burglary and two counts of theft of property. Because of these convictions, the circuit court also revoked Mathis's probation from an earli-

had found pry marks around one of his windows. One of the stolen jars, according to Coit, was unique.

A few weeks earlier, the police had alerted the Kroger employees to be on the lookout for a tall, white male using the Coinstar machine because someone had broken into the middle school and stolen coins. Carol Sneed, an employee at Kroger, saw Blackwell using Kroger's Coinstar machine on May 3, 2007, to cash in a jar of coins. Sneed saw Blackwell ⌊₃throw the empty jar in the trash can, and she and the Kroger manager recovered the jar and turned it over to the police. Carolyn Bronson, another Kroger employee, corroborated Sneed's story and added that she saw Mathis pull up to Kroger to pick Blackwell up. Coit testified that he was ninety-percent sure that the jar recovered from Kroger was his.

Steven Keistler was the other victim. He testified that a five-gallon water jug filled with coins was stolen from his house. On the night of May 5, 2007, Keistler was working as a D.J. at Club Brittany. Keistler saw Mathis at the club and briefly spoke with Mathis. Keistler noticed that Mathis left for about an hour and a half before reappearing at the club. When Mathis returned to the club, he bought beer with change. When Keistler returned home around 4:00 A.M., his door had been kicked in and his jug of coins was missing. A police officer recovered a five-gallon water jug a few days later in a creek near Club Brittany. Keistler testified that Mathis had admitted to stealing coins from him before, and that is why he thought Mathis stole the coins this time. Keistler said that he did not press charges the first time because he was friends with Mathis's parents.

■ We address the theft-of-property convictions first. The State had to prove that Mathis knowingly took or exercised unauthorized control over another person's property with the purpose of depriving the owner of the property. Ark.Code Ann. § 5–36–103(a). In addition to the evidence described above, the State presented a jailhouse admission.

While Mathis was in jail shortly after his arrest, his wife and his mother visited him. The police recorded their conversation. Mathis's mother told him that the police had found ⌊₄Coit's coin jar in the garbage can. Mathis said "[f]ingerprints of mine and Tyler's. None of Coit's." Then, after talking about the location of the "big" water jug, Mathis said "[t]he only way that there's . . . fingerprints on those jugs that belonged to them is if . . . [the police officer] hands it up here and says, 'Here, touch this, with your bare . . . hand.' And if he did it's throwed out because there's fingerprints overlapping our fingerprints. . . ." Mathis further admitted that "[w]e turned in change, but it was Tyler's change. And that's our story and we are sticking to it." When pressed by his mother, Mathis stated "I know it was stupid. We're dumb." He then added "if I get out, you know what I'm saying, it would be good. If I don't, you know, I get what I deserve, I guess."

Considered as a whole, the circumstantial evidence of theft was substantial. It satisfied the requirements of Arkansas Code Annotated section 5–36–103, and did not leave the fact-finder to speculation or conjecture. *Gamble v. State*, 351 Ark. 541, 545–47, 95 S.W.3d 755, 758–59 (2003). We therefore affirm Mathis's theft convictions.

■ We next consider the burglary convictions. The State had to prove that Mathis entered a residential occupiable structure of another person with the purpose of committing therein any offense punishable by imprisonment. Ark.Code Ann. § 5–39–201(a)(1). But "possession of

recently stolen property is *prima facie* evidence of guilt of burglary of the party in whose possession the property is found, unless it is satisfactorily accounted for to the [fact-finder]. This is so even if there is no direct evidence of breaking or entering by the appellant." *Stout v. State*, 304 Ark. 610, 617–18, 804 S.W.2d 686, 691 (1991). We have already held that substantial evidence exists that Mathis possessed the jars and jugs full of coins that were stolen from Coit's and Keistler's homes. Mathis's possession of the recently stolen property was left unexplained. We therefore affirm Mathis's burglary convictions as well. *Stout*, 304 Ark. at 617–18, 804 S.W.2d at 691; Ark.Code Ann. § 5–39–201(a)(1).

Affirmed.

ROBBINS, J., agrees.

MARSHALL, J., concurs.

D.P. MARSHALL JR., Judge, concurring.

I join the court's judgment because precedent requires me to do so. But I write separately to express my concern over the rule, developed in our cases, that "possession of recently stolen property is *prima facie* evidence of guilt of burglary, larceny and possession of stolen property. This presumption arises even when there is no direct evidence of breaking or entering by the defendant." *Jacobs v. State*, 287 Ark. 367, 369, 699 S.W.2d 400, 401 (1985). Due process requires the State to prove every essential element of every crime beyond a reasonable doubt. *In re Winship*, 397 U.S. 358, 363, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970). Entering, or remaining unlawfully in, another person's home is an essential element of residential burglary. Ark.Code Ann. § 5–39–201(a)(1). May entry or presence be inferred beyond a reasonable doubt solely from possession of stolen property? I don't think so. To satisfy the Due Process Clause, other facts and reasonable inferences must fill the evidentiary gap.

In some cases, this rule makes sense because of the defendant's close proximity—both in time and place—to the scene of the crime and the presence of other circumstantial evidence tying the defendant to the crime. *See, e.g., Stout v. State*, 304 Ark. 610, 804 S.W.2d 686 (1991); *Lane v. State*, 288 Ark. 175, 702 S.W.2d 806 (1986); *Jacobs, supra*; *Turner v. State*, 64 Ark.App. 216, 984 S.W.2d 52 (1998); *Alexander v. State*, 55 Ark.App. 148, 934 S.W.2d 927 (1996); *Brown v. State*, 35 Ark.App. 156, 814 S.W.2d 918 (1991). The defendant's proximity and other circumstances—plus possession—make the inference reasonable, logical, and sound.

Consider *Brown*. The police approached Brown around 9:30 one morning because he matched the description of a suspect. Brown abandoned the shopping cart he was pushing and fled, but was soon caught. The cart contained a variety of items, including a cable box that the police traced to a house two blocks away. When the police arrived at the house, they noticed that the door locks had been pried. The residents identified the items recovered from the shopping cart as their property. 35 Ark.App. at 158–60, 814 S.W.2d at 919–20. The burglary had taken place sometime that morning between 7:45 (when the residents left for work) and 10:45 (when the police arrived at the home). 35 Ark.App. at 160, 814 S.W.2d at 920. "Given appellant's possession of the stolen property, his flight from the police, and the close proximity in time and distance linking the appellant, the stolen property, and the burglarized residence," our court affirmed Brown's burglary conviction. 35 Ark.App. at 161, 814 S.W.2d at 920.

But in other cases, the rule defies logic. For example, in *Ward v. State*, someone broke into Wonder Junior High School in West Memphis over a weekend and stole musical instruments and shop tools. On Monday morning, Ward attempted to sell three of the stolen musical instruments at a Memphis pawn shop. When the police arrived at the shop, Ward claimed that the instruments were cast-offs from his recently disbanded musical group. The police pressed him for proof of ownership, but Ward, who had gone to his car to get his identification, got in his car and left. Police eventually arrested Ward back in West Memphis, and he gave conflicting stories— later proven to be outright lies—about his presence at the pawn shop and his possession of the instruments. *Ward v. State*, 280 Ark. 353, 354–55, 658 S.W.2d 379, 380 (1983). Our supreme court, on a petition for review, concluded that the circumstantial evidence was substantial and affirmed Ward's burglary and theft-of-property convictions. 280 Ark. at 356–57, 658 S.W.2d at 381.

On a writ of habeas corpus, however, the Eighth Circuit held that the evidence was insufficient to support Ward's burglary conviction.

> Ward's possession of three of the ten stolen instruments, his flight from the pawn shop, his call to West Memphis police to determine whether any instruments had been reported stolen, and his lying to police about his ownership of the instruments and presence at the pawn shop were all consistent with the charge of theft and Ward's prior trouble with the law. They were not, however, sufficient to establish the essential element of entry. In addition, Ward's own testimony, though apparently disbelieved by the jury, failed to provide any further support in establishing the requisite elements. The evidence as a whole failed to provide even a scintilla of proof showing that Ward burglarized the school. Without that essential proof, we must conclude that the jury exceeded the bounds of legitimate inference, and engaged in speculation in finding Ward guilty on that count.

*Ward v. Lockhart*, 841 F.2d 844, 847–48 (8th Cir.1988).

This case is similar to *Ward*. There is no direct or circumstantial evidence that Mathis ever entered either Coit's or Keistler's residence. Mathis's burglary convictions rest on these facts: he possessed the recently stolen jugs and jars of coins; he purchased beer with coins on the night that Keistler's house was burgled; he was seen driving on a highway in the direction of Coit's home sometime during the several-day period when the coins were stolen; and Mathis talked to his mother and his wife during jail visitation about his fingerprints being on the containers. Neither using coins to buy beer, nor traveling on a public road, nor the jail conversation supports the inference of entry into the homes beyond a reasonable doubt. Unlike in some of the other cases, Mathis was not caught in close proximity—either in time or place—to the crime scenes. But under precedent, the mere fact that Mathis possessed the coin jug and jars made a jury question on burglary and now constitutes substantial evidence supporting the convictions on appeal. *E.g., Stout, supra; Jacobs, supra*. Thus I must concur in the court's disposition of the case.

But the better rule is the one expressed by this court when it considered the *Ward* case. "If the State had established appellant's guilt solely on the basis of his possession of recently burglarized property, reversal would be mandated. However, the State may demonstrate by additional empirical evidence that a presumed fact is more likely than not to flow from the

proven fact on which it is made to depend." *Ward v. State*, 8 Ark.App. 209, 212, 649 S.W.2d 849, 851 (1983). This is the correct statement of the law. More than mere possession of recently stolen property is needed to convict a person of burglary. Our supreme court should reexamine the presumption arising from possession of recently stolen property. And the court should reconsider whether this rule—a rule hardened by rote repetition—always satisfies due process in these kinds of cases. I don't think it does. Not every thief is a burglar.