Dwight JACKSON *v.* STATE of Arkansas

CA CR 90-137                                    804 S.W.2d 735

Court of Appeals of Arkansas
Opinion delivered March 6, 1991

*William R. Simpson, Jr.*, Public Defender, by: *Llewellyn J. Marczuk*, for appellant.

*Steve Clark*, Att'y Gen., by: *Lynley Arnett*, Asst. Att'y Gen.,

6

for appellee.

MELVIN MAYFIELD, Judge. On May 21, 1987, appellant pleaded guilty to a charge of burglary and imposition of sentence was withheld for a period of five years conditioned upon compliance with certain conditions, one of which was to refrain from violating any law punishable by imprisonment. On October 18, 1989, a petition to revoke was filed which alleged appellant had violated the terms of his suspended imposition of sentence by possessing a controlled substance (crack cocaine), and on that same date an information was filed charging appellant with violating the statute prohibiting possession of such a substance.

On January 16, 1990, the court, by agreement, heard the revocation petition and the possession charge together using the same evidence for each case. At the conclusion of the hearing, the court revoked the suspended imposition of sentence and sentenced appellant to six years in the Arkansas Department of Correction. Appellant was also found guilty of possession of a controlled substance and was sentenced to three years on that conviction, to be served consecutively to the six-year sentence.

On appeal, appellant argues that the trial court erred in its failure to suppress as evidence the crack cocaine contained in a matchbox which was found in the appellant's jacket pocket as a result of a "pat down" made by a policeman. It is appellant's contention that this evidence was seized as a result of an illegal search. Specifically, it is contended that the officer did not have grounds to form a "reasonable suspicion" that appellant was involved in criminal activity; therefore, the officer's stop of appellant was unlawful and the cocaine should have been suppressed as evidence.

We first note that the exclusionary rule is generally not applicable to revocation proceedings. *Dabney* v. *State*, 278 Ark. 375, 646 S.W.2d 4 (1983); *Queen* v. *State*, 271 Ark. 929, 612 S.W.2d 95 (1981); *McGhee* v. *State*, 25 Ark. App. 132, 752 S.W.2d 303 (1988). Based upon the authority of these cases, we think the trial court's revocation should be affirmed under the circumstances of the instant case. However, we do not think the trial court erred in refusing to suppress the cocaine as evidence in this case, therefore, we also affirm the conviction for possession.

At trial, Mark Johnson testified that he had been working for fifteen months as a patrol officer for the North Little Rock Police Department. He said he first came in contact with the appellant on May 11, 1989, at approximately 9:30 to 9:45 p.m. while making an extra patrol through the Dixie Addition. Officer Johnson testified that this is basically a residential area, and "we get more calls there than other places in the city." He also testified that at roll call at the start of his shift, it is pointed out where extra patrol might be needed and "things to be on the lookout for," and in May of 1989, the police department was getting complaints, several times a week, about drug trafficking in the Dixie Addition, and at roll call these complaints were talked about.

On the night of May 11, Officer Johnson had been through the Dixie Addition one time and several male subjects ran from him. Because of that, two more units were called, and when they went back through the area, the appellant and three or four other males were standing in front of the abandoned grocery store located in the 800 block of E Street. The officers had received information about drug trafficking at the corner of Ninth and E Streets. So, the officers approached the men in front of the abandoned building to see what they were doing and asked them for identification. While the officers were approaching, one of the men walked away. The officers then patted down the other individuals to check for weapons. Johnson said this was for the officers' own protection because he had on several occasions arrested people in this area who had guns on them.

Johnson patted down the appellant and felt something hard in his right jacket pocket. Johnson then reached into the pocket and found two matchboxes. One was empty and the other contained three rocks of what the officer thought was crack cocaine, so he arrested the appellant. It was stipulated that a chemist would testify that the substance in the box tested positive for cocaine.

■ The appellant correctly argues that stopping and detaining a person is controlled by Ark. R. Crim. P. 3.1 which provides in pertinent part:

A law enforcement officer lawfully present in any place may, in the performance of his duties, stop and detain any person who he reasonably suspects is committing, has

committed, or is about to commit (1) a felony, or (2) a misdemeanor involving danger of forcible injury to persons or of appropriation of or damage to property, if such action is reasonably necessary either to obtain or verify the identification of the person or to determine the lawfulness of his conduct.

Also, as appellant points out, the meaning of the term "reasonably suspects" as used in Ark. R. Crim. P. 3.1, *supra*, is defined in Ark. R. Crim. P. 2.1 as "a suspicion based on facts or circumstances which of themselves do not give rise to the probable cause requisite to justify a lawful arrest, but which give rise to more than a bare suspicion; that is, a suspicion that is reasonable as opposed to an imaginary or purely conjectural suspicion." The appellant also recognizes that we are dealing with an area of the law which has been greatly influenced by the United States Supreme Court decision of *Terry* v. *Ohio*, 392 U.S. 1 (1968). In fact, the Commentary following Ark. R. Crim. P. 2.1 points out that Rules 2 and 3 of our Rules of Criminal Procedure are characteristic of those generated by the *Terry* v. *Ohio* decision. These rules were discussed at length by the Arkansas Supreme Court in *Hill* v. *State*, 275 Ark. 71, 80, 628 S.W.2d 284 (1982), *cert. denied*, 459 U.S. 882 (1982), where it was said:

> The courts have used various terms to describe how much cause or suspicion is necessary or reasonable in order to stop a person or vehicle. The common thread which runs through the decisions makes it clear that the justification for the investigative stops depends upon whether, under the totality of the circumstances, the police have specific, particularized, and articulable reasons indicating the person or vehicle may be involved in criminal activity. *U.S.* v. *Cortez*, 449 U.S. 411 (1981); *Michigan* v. *Summers*, 452 U.S. 692, 101 S.Ct. 2587 (1981); *Terry* v. *Ohio*, 392 U.S. 1 (1968).

The appellant contends, however, that in the instant case "Officer Johnson's stop failed the 'reasonable suspicion' test as there were not specific, particularized, and articulable reasons indicating involvement by the appellant in criminal activity." Since we do not agree, rather than attempting to compare the facts in various cases with the facts in this case, we will discuss the

general principles we think the cases on this point teach.

■ To start with, we point out that in reviewing a trial judge's decision on a motion to suppress, this court makes an independent determination based upon the totality of the circumstances but will reverse the trial court's ruling only if that ruling was clearly against the preponderance of the evidence. *Campbell v. State*, 294 Ark. 639, 642, 746 S.W.2d 37 (1988); *Dees v. State*, 30 Ark. App. 124, 128, 783 S.W.2d 372 (1990).

■ The United States Supreme Court has said that the Fourth Amendment bars only unreasonable searches and seizures and in determining reasonableness, "we have balanced the intrusion on the individual's Fourth Amendment interests against its promotion of legitimate governmental interests." *Maryland v. Buie*, 494 U.S.___, 108 L.Ed. 2d 276, 284, 110 S.Ct. 1093, 1096 (1990). In *United States v. Cortez*, 449 U.S. 411, 417 (1981), the Court said that terms like "articulable reasons" are not self-defining and "fall short of providing clear guidance dispositive of the myriad factual situations that arise. But the essence of all that has been written is that the totality of the circumstances—the whole picture—must be taken into account." The Court also said:

> The idea that an assessment of the whole picture must yield a particularized suspicion contains two elements, each of which must be present before a stop is permissible. First, the assessment must be based upon all of the circumstances. The analysis proceeds with various objective observations, information from police reports, if such are available, and consideration of the modes or patterns of operation of certain kinds of lawbreakers. From these data, a trained officer draws inferences and makes deductions—inferences and deductions that might well elude an untrained person.

> The process does not deal with hard certainties, but with probabilities. Long before the law of probabilities was articulated as such, practical people formulated certain common-sense conclusions about human behaviour; jurors as factfinders are permitted to do the same—and so are law enforcement officers. Finally, the evidence thus collected must be seen and weighed not in terms of library analysis

by scholars, but as understood by those versed in the field of law enforcement.

449 U.S. at 418. And in *Tillman* v. *State*, 275 Ark. 275, 280, 630 S.W.2d 5 (1982), the Arkansas Supreme Court stated:

> In *United States* v. *Brignoni-Ponce*, 422 U.S. 873 (1975), the court dealt with the problem of the United States Border Patrol's authority to stop automobiles near the Mexican border. Referring to *Terry* v. *Ohio*, the court said:
>
>> The Fourth Amendment does not require a policeman who lacks the precise level of information necessary for probable cause to arrest to simply shrug his shoulders and allow a crime to occur or a criminal to escape. On the contrary, *Terry* recognizes that it may be the essence of good police work to adopt an intermediate response . . . *A brief stop of a suspicious individual, in order to determine his identity or to maintain the status quo momentarily while obtaining more information, may be most reasonable in light of the facts known to the officer at the time.* (Emphasis supplied.)

Although the appellant in the instant case primarily contends that the police officer's stop was unlawful, the appellant does state that the officer's search was "far more extensive" than was reasonably necessary. Ark. R. Crim. P. 3.4 provides that when a law enforcement officer has detained a person under Ark. R. Crim. P. 3.1 whom the officer "reasonably suspects" is armed and presently dangerous to the officer or others, the officer may "search the outer clothing of such person" and may seize any "weapon or other dangerous thing" which may be used against the officer or others. The rule also provides that "in no event shall this search be more extensive than is reasonably necessary to ensure the safety of the officer or others." In *Hill* v. *State, supra,* the Arkansas Supreme Court quoted with approval the following from *Terry* v. *Ohio*:

> We are now concerned with more than the governmental interest in investigating crime; in addition, there is the more immediate interest of the police officer in taking steps to assure himself that the person with whom he is dealing is

not armed with a weapon that could unexpectedly and fatally be used against him. Certainly it would be unreasonable to require that police officers take unnecessary risks in the performance of their duties.

275 Ark. at 81. In *United States* v. *Alvarez*, 899 F.2d 833, 839 (9th Cir. 1990), the court said:

> The decision to frisk Alvarez for weapons was similarly justified. "Police are entitled to take steps to assure that the person stopped is not armed." *Greene*, 783 F.2d at 1368. "The purpose of the *Terry* frisk is 'to allow the officer to pursue his investigation without fear of violence.'" *United States* v. *Bautista*, 684 F.2d 1286, 1289 (9th Cir. 1982).

In *United States* v. *Laing*, 889 F.2d 281 (D.C. Cir. 1989), the court made the following statements in discussing the stop and weapon-search permissible in a *Terry* v. *Ohio* situation:

> The amount of force used to carry out the stop and search must be reasonable, but may include using handcuffs or forcing the detainee to lie down to prevent flight, *United States* v. *Taylor*, 716 F.2d 701, 708-09 (9th Cir. 1983) or drawing guns where law officers reasonably believe they are necessary for their protection. *E.g.*, *United States* v. *Merritt*, 695 F.2d 1263, 1272-74 (10th Cir. 1982) *cert. denied*, 461 U.S. 916, 103 S.Ct. 1898, 77 L.Ed. 2d 286 (1983). Factors that may justify an investigative stop, a search for weapons, or the escalated use of force include the time of day, the "high-crime" nature of the area, an informant's tips that persons might be armed, furtive hand movements, flight or attempted flight by the person sought to be detained, and a pressing need for immediate action. *Adams*, 407 U.S. at 147-48, 92 S.Ct. at 1924; *White*, 648 F.2d at 39-40, 43.

889 F.2d at 285-86.

■ Applying our Rules of Criminal Procedure and the general principles of the above cases to the evidence in this case, we believe the trial court could find that Officer Johnson reasonably suspected that the men in front of the abandoned building were engaging in drug use or traffic. Johnson's testimony dis-

closes specific, particularized, and articulable reasons for his suspicion. This is especially true when we consider that Johnson had fifteen months' experience as a patrol officer, much of which was in the Dixie Addition, and that he had information and reports from the police department which, as the Court said in *United States* v. *Cortez, supra,* should be weighed "not in terms of library analysis by scholars, but as understood by those versed in the field of law enforcement." We also believe the trial court could find from the evidence in this case that under our Rules of Criminal Procedure and the principles of the above cases, Officer Johnson, in the Dixie Addition after dark, performing the job he was assigned to do, was justified in patting the appellant down to determine whether he was carrying a weapon. And when we consider that the Fourth Amendment, by which the law in this case is guided, only bars unreasonable searches and seizures, we think it clear that promotion of the legitimate governmental interests in preventing crime outweighs any intrusion on the appellant's Fourth Amendment rights in this case. *Maryland* v. *Buie, supra*; *Miller* v. *State,* 21 Ark. App. 10, 727 S.W.2d 393 (1987). The fact that the conduct observed by the officer is consistent with innocence will not preclude a legitimate stop. *See United States* v. *Price,* 599 Fed. 2d 494, 502 (2nd Cir. 1979) ("It must be rare indeed that an officer observes behavior consistent only with guilt and incapable of innocent interpretation."). In the instant case, we cannot say the trial judge's decision was clearly against the preponderance of the evidence.

■ Although our inquiry might end here, we briefly discuss one other point. We have in our conference discussed whether Officer Johnson legally opened the matchbox found in appellant's pocket. While it seems clear that an ordinary gun or weapon would not fit into a matchbox, this does not mean that the officer did not have the right to open the matchbox. Under Ark. R. Crim. P. 3.4, he was authorized to seize "any weapon or other dangerous thing" which "may" be used against the officer. The matchbox was not part of the record filed in this court; therefore, we do not know its size, but even a "penny" matchbox could hold a razor blade. Moreover, it occurs to us that the trial court would be in a better position than we are to judge whether a "dangerous thing" could fit into the matchbox. One court has upheld the taking of a shotgun shell from a defendant's pocket because it could be used

as a weapon as it could be detonated by any sharp object. *People* v. *Atmore*, 13 Cal. App. 3d 244, 91 Cal. Rptr. 311 (1970). And in *Webb* v. *State*, 269 Ark. 415, 601 S.W.2d 848 (1980), our supreme court held that a controlled substance found in a bottle which was in a sack in the appellant's pant's pocket was admissible as evidence when the bottle was found during a *Terry* v. *Ohio* pat-down search. The court also cited as authority a Kansas case "where marijuana concealed in the defendant's socks was admitted in evidence because weapons are often concealed in a defendant's socks."

■ However, even if the officer could not open the matchbox because he could not reasonably suspect it contained "any weapon or other dangerous thing," he could certainly know from its sound and feel that it did not contain matches. And it surely must be true that, under all the circumstances shown by the evidence in this case, the officer would have reasonable cause to believe the box contained a controlled substance of some type. An officer may arrest a person without a warrant if he has reasonable cause to believe the person has committed a felony. *Johnson* v. *State*, 21 Ark. App. 211, 730 S.W.2d 517 (1987). *See also* Ark. R. Crim. P. 4.1(a)(i).

> Reasonable cause exists where facts and circumstances, within the arresting officer's knowledge and of which he has reasonably trustworthy information, are sufficient within themselves to warrant a man of reasonable caution to believe that an offense has been committed by the person to be arrested.

*Johnson*, 21 Ark. App. at 213. With the matchbox lawfully in his hand and with reasonable cause to believe it contained a controlled substance, Officer Johnson could arrest the appellant and, as incident to the arrest, he could seize the contraband in the matchbox. Id. at 214. In *Horton* v. *State*, 262 Ark. 211, 555 S.W.2d 226 (1977), the appellant was arrested upon probable cause based upon the information of a reliable informer that appellant had in his possession a matchbox containing 20 papers of heroin. The box was retrieved by the arresting officers, and they opened the box and removed the heroin. Both the arrest and seizure were held valid. *See also Holmes* v. *State*, 262 Ark. 683, 561 S.W.2d 56 (1978).

Affirmed.

CRACRAFT, C.J., JENNINGS and ROGERS, JJ., concur in part and dissent in part.

GEORGE K. CRACRAFT, Chief Judge, concurring in part; and dissenting in part. I dissent from that part of the prevailing opinion holding that the trial court did not err in refusing to suppress the cocaine as evidence during appellant's prosecution for possession.

I have no real problem, under the facts of this case, accepting that the officer had a right to investigate the gathering of persons in front of the abandoned store. As part of his investigation, he could inquire of appellant as to his activity and would be authorized to perform a limited, pat-down search of appellant's person for his own protection.

Where I depart from the prevailing opinion is its holding that the officer then had the right to look inside the matchbox. First, there is nothing in the record even suggesting that the officer's motive in doing so was the possibility that it may have contained some dangerous weapon or threat to his safety. Nor do I think that this intrusion can be justified on the theory that the officer had probable cause to believe that the matchbox contained a controlled substance. Even considering that this was a high-crime area, in the absence of some other evidence, the mere fact that a matchbox contains something other than matches cannot be said to amount to probable cause to believe that it, therefore, contains a controlled substance. While the officer may have suspected as much, neither a mere suspicion nor even a "strong reason to suspect" will suffice. See Roderick v. State, 288 Ark. 360, 705 S.W.2d 433 (1986).

ROGERS, J., joins in this dissent.

JOHN E. JENNINGS, Judge, concurring in part; and dissenting in part. The majority is correct in its holding that, as to the revocation proceeding, the constitutional validity of the "frisk" is immaterial because the exclusionary rule does not apply, and I therefore concur in that portion of the opinion which affirms the trial court's judgment revoking appellant's probation. I do not agree, however, that the search of the appellant was constitutionally valid.

As the majority recognizes, the "stop and frisk" exception to the fourth amendment right of freedom from unreasonable searches and seizures was established in *Terry* v. *Ohio*, 392 U.S. 1 (1968). In discussing that right the Supreme Court in *Terry* said:

> This inestimable right of personal security belongs as much to the citizen on the streets of our cities as to the homeowner closeted in his study to dispose of his secret affairs. For, as this Court has always recognized, "No right is held more sacred, or is more carefully guarded, by the common law, then the right of every individual to the possession and control of his own person, free from all restraint or interference of others, unless by clear and unquestionable authority of law." *Union Pac. R. Co.* v. *Botsford*, 141 U.S. 250 (1891).

392 U.S. at 9.

In discussing the anticipated effect of the decision, the *Terry* court said:

> Under our decision, courts still retain their traditional responsibility to guard against police conduct which is overbearing or harassing, or which trenches upon personal security without the objective evidentiary justification which the Constitution requires. When such conduct is identified, it must be condemned by the judiciary and its fruits must be excluded from evidence in criminal trials.

392 U.S. at 15.

In addressing the nature of the intrusion the court stated:

> It must be recognized that whenever a police officer accosts an individual and restrains his freedom to walk away, he has "seized" that person. And it is nothing less than sheer torture of the English language to suggest that a careful exploration of the outer surfaces of a person's clothing all over his or her body in an attempt to find weapons is not a "search." Moreover, it is simply fantastic to urge that such a procedure performed in public by a policeman while the citizen stands helpless, perhaps facing a wall with his hands raised, is a "petty indignity." It is a serious intrusion upon the sanctity of the person, which may inflict great

indignity and arouse strong resentment, and it is not to be undertaken lightly.

392 U.S. at 16.

Finally, in discussing the standard to be applied the *Terry* Court held:

> And in justifying the particular intrusion the police officer must be able to point to specific and articulable facts which, taken together with rationale inferences from those facts, reasonably warrant that intrusion. . . . Anything less would invite intrusions upon constitutionally guaranteed rights based on nothing more substantial than inarticulate hunches, a result this court has consistently refused to sanction.

392 U.S. at 21, 22 (citations omitted).

Cases such as *Hill* v. *State*, 275 Ark. 71, 628 S.W.2d 285 (1982), *United States* v. *Alvarez*, 898 F.2d 833 (9th Cir. 1990), and *United States* v. *Laing*, 889 F.2d 281 (D.C. Cir. 1989), are very different factually from the case at bar. In each of those cases the police officers had specific, particularized information that the defendant was armed. Hill was a murder suspect described in a radio dispatch as "armed and extremely dangerous." The authorities had information that Alvarez was going to rob a bank and had dynamite with him. In *Laing*, the police had a valid search warrant and the affidavit described the occupants of the apartment to be searched as being armed with automatic weapons.

The case at bar cannot be successfully distinguished from *Ybarra* v. *Illinois*, 444 U.S. 85 (1979). There, police officers had a valid warrant to search a tavern in Aurora, Illinois, and its bartender, who they suspected was selling heroin. When the officers entered the tavern they found approximately ten customers present, including Ybarra, and immediately conducted a pat down search for weapons. In frisking Ybarra the officers found a cigarette pack containing several tinfoil packets of heroin.

The United States Supreme Court ruled that the search was constitutionally impermissible:

> The initial frisk of Ybarra was simply not supported by a

reasonable belief that he was armed and presently dangerous, a belief which this court has invariably held must form the predicate to a patdown of a person for weapons. . . .

. . . The "narrow scope" of the Terry exception does not permit a frisk for weapons on less than reasonable belief or suspicion directed at the person to be frisked, even though that person happens to be on premises where an authorized narcotic search is taking place.

The dissenting justices in *Ybarra* took the view that the search could be sustained because the officers were operating pursuant to a valid search warrant, a factor which is not present in the case at bar.

Finally, while like the Court in *Ybarra* I would not reach the issue, the retrieval of and search into the matchbox clearly violates Ark. R. Crim. P. 3.1

For the foregoing reasons I respectfully dissent from the majority's holding that the search of the appellant was constitutionally permissible.