Jason PYLES *v.* STATE of Arkansas

CA CR 95-1008 935 S.W.2d 570

Court of Appeals of Arkansas
En Banc
Opinion delivered December 11, 1996
[Petition for rehearing denied January 15, 1997.]

*Young & Finley*, by: *Dale W. Finley*, for appellant.

*Winston Bryant*, Att'y Gen., by: *Clint Miller*, Deputy Att'y Gen., Sr. Appellate Advocate for appellee.

JOHN B. ROBBINS, Judge. On May 17, 1995, the appellant was found guilty of possession of a controlled substance (methamphetamine) with intent to deliver and was sentenced to ten years in the Arkansas Department of Correction. On appeal the appellant contends that the trial court erred in failing to grant his motion to suppress. We find no error and affirm.

The evidence showed that on May 19, 1994, several officers with the Fort Smith Police Department went to a residence in Barling to arrest the appellant on two misdemeanor warrants unrelated to the present case. After arriving at the residence, the officers were permitted entry by Jodie Cathers, the brother of appellant's girlfriend. Mr. Cathers was informed of the warrants and then escorted the officers to a bedroom where the appellant was in bed. Officer Steve Scott informed appellant of the warrants and re-

quested him to get dressed and accompany them to the living room. Officer Scott advised the appellant of his Miranda rights and attempted to do a "field search" of the appellant for weapons in the course of arresting him and taking him into custody.

During the search incident to arrest Officer Scott noticed a large bulge in appellant's pocket. Appellant was asked what was in his pocket and he responded that it was a 35-millimeter film canister with film in it. Scott testified that the appellant attempted to surrender the film canister to Jodie Cathers and was evasive to the officer's questions. Officer Scott took the canister from the appellant, opened it, and found three small packets of what was later identified as methamphetamine.

Appellant moved to suppress this evidence and contends on appeal that the trial court erred in failing to grant his motion. Appellant specifically argues on appeal that Ark. R. Crim. P. 12.1 did not justify a search of the container. He contends that only 12.1(a) would be applicable but that it could not apply to these facts because the search was not conducted for the officer's protection, disputing the officer's credibility.

In reviewing a trial court's decision to deny an appellant's motion to suppress evidence, we make an independent determination based on the totality of the circumstances and will reverse the decision only if it is clearly against the preponderance of the evidence. *Dickerson v. State*, 51 Ark. App. 64, 909 S.W.2d 653 (1995). Because the preponderance of the evidence turns heavily on the question of credibility, we defer to the superior position of the trial court in determining which evidence is to be believed. *Folly v. State*, 28 Ark. App. 98, 771 S.W.2d 306 (1989).

Arkansas Rule of Criminal Procedure 12.1 states:

An officer who is making a lawful arrest may, without a search warrant, conduct a search of the person or property of the accused for the following purposes only;

(a) to protect the officer, the accused, or others;

(b) to prevent the escape of the accused;

(c) to furnish appropriate custodial care if the accused is jailed; or

(d) to obtain evidence of the commission of the offense

for which the accused has been arrested or to seize contraband, the fruits of crime, or other things criminally possessed or used in conjunction with the offense.

It appears that both Rule 12.1(a) and 12.1(d) were applicable to the fact situation of this case. The officers were conducting a lawful search incident to the execution of two arrest warrants. Pursuant to Rule 12.1(a), Officer Scott testified that the search for weapons was for the officers' personal safety, and that he looked inside the film canister for their safety and to identify any items appellant was attempting to release to Mr. Cathers.[1] The trial court could have found that it was possible that the film canister contained a weapon such as a razor blade. See Jackson v. State, 34 Ark. App. 4, 804 S.W.2d 735 (1991). By virtue of the authorization for a search provided under Ark. R. Crim. P. Rule 12.1(a), we cannot say that the court's denial of appellant's motion to suppress is clearly erroneous.

The United States Supreme Court has held that once a lawful arrest has been made, a search incidental to the arrest may be made whether or not there is probable cause to believe that the person arrested may have a weapon or is about to destroy evidence; no further justification is required. United States v. Chadwick, 433 U.S. 1 (1977); United States v. Robinson, 414 U.S. 218 (1973). The Supreme Court expressed its rationale for such searches as follows:

A police officer's determination as to how and where to search the person of a suspect whom he has arrested is necessarily a quick ad hoc judgment which the Fourth Amendment does not require to be broken down in each instance into an analysis of each step in the search. The authority to search the person incident to a lawful custodial arrest, while based upon the need to disarm and to discover evidence, does not depend on what a court may later decide was the probability in a particular arrest situation that weapons or evidence would in fact be found upon the person of

---

[1] The concurring opinion implies that there was no common sense reason as to why the police officers should have had any concern for their safety in executing these mere misdemeanor warrants. The record, however, reveals that appellant was the principal suspect in a homicide case in which the victim's throat had been slit or stabbed. The misdemeanor warrants afforded the police a means by which they could bring the appellant in for questioning.

the suspect. A custodial arrest of a suspect based on probable cause is a reasonable intrusion under the Fourth Amendment; that intrusion being lawful, a search incident to the arrest requires no additional justification. It is the fact of the lawful arrest which establishes the authority to search, and we hold that in the case of a lawful custodial arrest a full search of the person is not only an exception to the warrant requirement of the Fourth Amendment, but is also a "reasonable" search under that Amendment.

*Id.* at 235–236.

■ Arkansas Rule of Criminal Procedure 12.1(d) is also applicable to the facts of this case. While it is true that state law may offer greater protection than the United States Supreme Court holds that our federal constitution requires, Arkansas cases have interpreted Rule 12.1(d) in the same manner and used the same rationale as the Supreme Court in *Robinson.* In *Baxter* v. *State,* 274 Ark. 539, 626 S.W.2d 935 (1982), our supreme court held that a search incident to arrest requires no additional justification, finding that a search of containers, whether open or closed, may be conducted pursuant to a lawful custodial arrest. Our supreme court has also said that Rule 12.1(d) allows officers to search for evidence of any crime, not just the crime for which an accused is being arrested. In *Stout* v. *State,* 304 Ark. 610, 615, 804 S.W.2d 686, 689 (1991), the supreme court stated, "[P]ursuant to Ark. R. Crim. P. Rule 12.1(d), a police officer who makes a lawful warrantless arrest is authorized to search the person or property of the accused to look not only for weapons but also fruits and instrumentalities of crime. Even if the fruits and instrumentalities of any other crime are found, those are properly seized."

In the case of *Holmes* v. *State,* 262 Ark. 683, 561 S.W.2d 56 (1978), the supreme court reviewed a search conducted pursuant to a lawful arrest. In that case the officers were searching the appellant's person when they discovered a piece of aluminum foil in the appellant's pocket. The officers opened the piece of aluminum foil and discovered heroin inside. The appellant moved to suppress this evidence. Relying on Rule 12.1 and *Chimel* v. *California,* 395 U.S. 752 (1969), the court upheld the trial court's denial of appellant's motion holding that evidence of another crime discovered during a search incident to arrest may be properly seized and should not be suppressed.

■ In the present case, the officer was searching the appellant pursuant to a valid arrest warrant. The officer could search any container on appellant's person pursuant to Rule 12.1(a), and once evidence of another crime was discovered in the container, it could be seized pursuant to Rule 12.1(d) under the authority of the cases cited above. The trial court properly denied appellant's motion to suppress.

Affirmed.

JENNINGS, C.J., and HAYS, S.J., agree.

GRIFFEN, STROUD, and PITTMAN, JJ., concur.

WENDELL L. GRIFFEN, Judge, concurring. If Arkansas did not have Rule 12.1 in our Rules of Criminal Procedure and if it were left to police officers to decide whether the reasons asserted for warrantless searches and seizures incidental to lawful arrests are valid, I could fully agree with the view taken by the majority concerning this case given the holding by the United States Supreme Court in *Chimel* v. *California*, 395 U.S. 752 (1969), and followed in *U.S.* v. *Robinson*, 414 U.S. 218 (1973), and *Gustafson* v. *Florida*, 414 U.S. 260 (1973). However, as the majority correctly points out, state law may expand constitutional protections beyond those articulated in U.S. Supreme Court opinions. *See Stout* v. *State*, 320 Ark. 552, 898 S.W.2d 457 (1995). Rule 12.1 does just that in Arkansas. I cannot agree to read Rule 12.1 (especially subsection (a)) out of existence; neither will I agree that it means the protection against unreasonable searches and seizures guaranteed by the Fourth Amendment to the Constitution of the United States depends on whatever police officers decide to say their intent was after performing a warrantless search, particularly when their expressed intent is entirely inconsistent with the objective facts shown in the record in view of the totality of the circumstances. Therefore, I concur in the result.

Rule 12.1 states:

An officer who is making a lawful arrest may, without a search warrant, conduct a search of the person or property of the accused *for the following purposes only*:
  (a) to protect the officer, the accused, or others;
  (b) to prevent the escape of the accused;
  (c) to furnish appropriate custodial care if the accused is

jailed; or
(d) to obtain evidence of the commission of the offense for which the accused has been arrested or to seize contraband, the fruits of crime, or other things criminally possessed or used in conjunction with the offense.

Ark. R. Crim. P. 12.1 (emphasis added).

The application of the standard of review to the facts is also critical to the disposition of this appeal. It is well settled that an appellate court makes an independent determination, based on the totality of the circumstances, as to whether evidence obtained by means of a warrantless search should be suppressed, and the trial court's finding will not be set aside unless it is clearly against the preponderance of the evidence or clearly erroneous. *State* v. *Tucker*, 268 Ark. 427, 597 S.W.2d 584 (1980). This standard of review for motions to suppress in a search and seizure context has also been described as "de novo" and "in light of the entire record." *U.S.* v. *McManus*, 70 F.3d 990 (8th Cir. 1995); *U.S.* v. *Delaney*, 52 F.3d 182 (8th Cir. 1995). In other words, the appellate court is asked to step back and take a fresh look at the facts while still applying the clearly erroneous standard for errors of law.

The majority is correct insofar as it relies on subsection (d) of Rule 12.1 to reach its result. The Arkansas Supreme Court has also held that a police officer who makes a lawful warrantless arrest is authorized to search the person or property of the accused to look not only for weapons but also for the fruits and instrumentalities of crime, and that even if the fruits and instrumentalities of any other crime are found, they are properly seized. *Stout* v. *State*, 304 Ark. 610, 804 S.W.2d 686 (1991). Earlier, in *Van Daley* v. *State*, 20 Ark. App. 127, 725 S.W.2d 574 (1987), this court upheld the seizure of evidence discovered in the course of a proper search incident to arrest without regard to whether the seized items were connected with the offense for which the accused was initially arrested. My position is not meant to challenge the authority of law enforcement officers to conduct searches incidental to lawful arrests. Instead, I conclude that while this motion to suppress may be upheld under Rule 12.1(d), the facts of this case — in light of the standard of review for search and seizure cases—cannot support the trial court's decision under Rule 12.1(a).

As the title of the rule reveals, Rule 12.1 prescribes the *permissible purposes* under which an officer who is making a lawful arrest may conduct a warrantless search of the person or property of the accused. Although the majority opinion relies upon both subsection (a) and (d) of the rule to affirm the trial court's ruling, both parties in their briefs concluded, albeit erroneously, that the controlling provision of the rule was subsection (a).[1] That subsection permits an officer making a lawful arrest to conduct a warrantless search of the person or property of the accused "to protect the officer, the accused, or others." Ark. R. Crim. P. 12.1(a). Thus, we are obliged to make an independent determination based on the totality of the circumstances as to whether the warrantless search of appellant's property was done to protect the arresting officers, the accused, or anybody else. *Id.*, *Tucker, supra.* Our task does not end at merely finding out if the arresting officers said that they searched appellant's property out of concern for their safety. We must, instead, independently determine whether the totality of the circumstances supports their asserted rationale for the warrantless search. With all due respect to the differing opinions of my colleagues, common sense plainly shows that the asserted rationale of the police officers about concern for their safety is not borne out by the totality of the circumstances presented by this record.

At least three police officers went to a Barling, Arkansas, residence to arrest appellant on May 19, 1994, based on misdemeanor warrants otherwise unrelated to this appeal. They were admitted to the residence by Jodie Cathers, the brother of appellant's girlfriend, who escorted the officers to a bedroom where appellant was sleeping. Officer Scott told appellant about the warrants and directed him to get dressed. The officers then withdrew from the bedroom into the living room of the residence, and appellant joined them there moments later after he had dressed. Although versions of what happened next vary, no one denies that Officer Scott asked appellant about a bulge in his pants pocket, and that appellant replied that the bulge was a 35-millimeter film canister containing film. Appellant claims that he took the film canister

---

[1] Despite this misplaced reliance by the parties—and apparently the trial court—on subsection (a), it is proper for this court to affirm based on subsection (d). We will affirm the trial court if it reached the right result, even though it may have announced the wrong reason. *Southern Farm Bureau Cas. Ins. Co.* v. *Pettie*, 54 Ark App. 79, 924 S.W.2d 828 (1996).

from his pocket and placed it on a table, intending to leave it with Cathers. Officer Scott claims that he took the canister from appellant, opened it, and found three packets of what was later determined to be methamphetamine. Regardless to the version one adopts, nobody claims that appellant said anything, did anything, or otherwise made any overtures that were deemed *threatening* to any of the officers, Cathers, or to himself. Furthermore, there is no evidence in the record to show that any of the officers believed that they would have been threatened by leaving the canister in the residence when they left to take appellant into custody.

Courts are not required to accept statements by police officers regarding their purposes for making warrantless searches on blind faith. This is implicit in our standard of review when it asks us to make an independent determination based on the totality of the circumstances. *Tucker, supra.* This arrest and search was unusual, if for nothing else, because of its amicability. The police were granted entry into the residence with the consent of the appellant's girlfriend's brother, the appellant was permitted to dress himself unattended in his own room, and, most curiously, the appellant was not patted down or otherwise searched by one of the three officers in the room; he was simply allowed to empty his pockets. Officer Scott testified that this self-search was allowed so that the appellant could release his personal items to his girlfriend's brother before going down to the station. Scott admitted that this was not standard procedure. Although Scott eventually testified that he opened the film canister out of concern for his safety, the bulk of his testimony and the objective facts surrounding the arrest and search in no way suggest that appellant posed a safety threat at any time. If Scott and the other officers were truly concerned for their safety, and if that purported concern was at least partly based on knowledge that the appellant was a prime suspect in a murder investigation, common sense and a practical desire to minimize any risk of danger — let alone appellant's possible escape — weighed against leaving appellant alone in the bedroom to clothe himself before meeting the officers in the living room. There were three armed policemen in the living room when appellant removed the film canister from his pocket. Nobody claims that appellant was trying to keep the film canister, where it could have posed a threat to the arresting officers,

appellant, or others.[2] Instead, the record plainly shows that appellant was preparing to leave the residence, without resistance, *and that he voluntarily divested himself* of the item in question to leave it at the residence after Officer Scott questioned him about it.

I fully favor upholding warrantless searches by police officers when they are necessary to protect the officers from possible danger. However, the Fourth Amendment's protection against unreasonable searches and seizures requires that the police demonstrate a justifiable reason for conducting any search without a warrant, and it is the business of trial judges and appellate courts to determine whether asserted reasons are legitimate. When three armed police officers assert that a warrantless search of a film canister that has been surrendered by an arrested suspect whom they are removing from the site of the arrest into police custody is justified for their safety, after they have chosen to turn their backs on the suspect and leave him unattended, common sense and our standard of review dictate that the validity of the search turn on something more than the say-so of the officers. Otherwise, trial judges and appellate courts merely become rubber stamps for whatever explanations that arresting officers may give, no matter how self-serving and baseless they may be.

The Fourth Amendment's guarantee against unreasonable searches and seizures should not expose police officers to unjustified dangers while making lawful arrests, as the U.S. Supreme Court has recognized in *Chimel* and its progeny. The Arkansas Supreme Court has prescribed Rule 12.1 accordingly. However, intelligent concern for the dangers faced by the police should not cause trial judges and appellate courts to delegate to arresting officers the judicial function of determining whether the asserted reasons for a warrantless search incident to arrest exist are so in the first instance, and whether they

---

[2] The majority cites *Jackson v. State* for the proposition that even a "matchbox could hold a razor blade." 34 Ark. App. 4, 804 S.W.2d 735 (1991). *Jackson* misses the point for several reasons. First, no one contended in this case that a 35-mm film canister could not contain something dangerous. Second, *Jackson* concerned a *Terry* stop and frisk—a type of search different from a search-incident and analyzed under different rules. *See Terry v. Ohio*, 392 U.S. 1 (1968). Third, even if stop-and-frisk rules applied here, *Jackson* makes my point. There, the warrantless search was upheld because the factual context gave the police officer reason to fear for his safety. The officer was outside in a high-crime area after dark, attempting to detain a suspect that had attempted to leave the scene. *Jackson, supra.* Those are precisely the type of facts missing here.

are justified in view of the constitutional right to be free from *unreasonable* searches and seizures. If this search is to be upheld, it must be done on some basis other than Rule 12.1(a). It was clear error for the trial court to consider this a *protective* search.

I respectfully concur.

I am authorized to state that Judge Stroud joins in this opinion.