Dectric FRANKLIN *v.* STATE of Arkansas

CR 92-1190                                                  863 S.W.2d 268

Supreme Court of Arkansas
Opinion delivered October 4, 1993
[Rehearing denied November 1, 1993.]

*McCullough Law Firm*, by: *R. S. McCullough*, for appellant.

*Winston Bryant*, Att'y Gen., by: *Clint Miller*, Senior Asst. Att'y Gen., for appellee.

ROBERT L. BROWN, Justice. This is a case involving the shooting of two men who were self-appointed security guards at a North Little Rock apartment building. Both men were shot in the back, and one was killed. The appellant, who was age 16 at the time of this offense, was convicted of one count of capital murder and one count of attempted capital murder. He was sentenced to life in prison without the possibility of parole for capital murder and thirty years imprisonment plus a fine of $15,000.00 for attempted capital murder.

The appellant filed a notice of appeal before the judgment was entered and has not filed a motion to file a belated appeal. He raises seven issues on appeal: whether the trial court erred by (1) not promptly ruling on his *Batson* motion; (2) not sensitizing or allowing the jury to be sensitized to the racial issue present in this case; (3) not granting his for-cause challenges; (4) not granting him more peremptory challenges; (5) allowing the State to question him about his right to remain silent; (6) not instructing the jury on lesser included offenses; and (7) conducting a trial that effectively denied him his rights to due process and to a fair trial.

We hold that we do have jurisdiction to hear this appeal, and

we affirm.

The victims of the shooting, Richard Campbell and Thomas Bryan, had apartments in a building located at 615 Maple Street in North Little Rock. After talking to the owner of the building about a neighborhood watch program, Campbell took it upon himself to become a security guard for the area. He bought a security guard uniform, a night stick, whistle, mace, and a flashlight.

On the evening of July 10, 1991, Campbell asked Bryan if he also wanted to become involved as a guard. Bryan agreed and pinned a security guard patch on his shirt. Bryan took a baseball bat with him when he went out to join Campbell on patrol. It was after 11:00 p.m., and several youngsters, including Franklin, were standing on the corner of 620 Maple Street. They began taunting Campbell and Bryan, asking them if they thought they were police officers. Bryan approached the group and got into a verbal altercation with an individual later identified as the appellant. Campbell came over to Bryan and suggested that they go inside and put the baseball bat away. A witness later testified that he heard the appellant then state "he was going to shoot some white people." The two men had just walked through the front door and were entering the hallway to their apartments when a youngster later identified as Franklin ran up behind them and fired at least four shots at them. Three shots hit Campbell in the back and one hit Bryan in the back. Campbell died shortly after arriving at the hospital. Bryan was treated at the hospital and released. Both victims were white. Franklin is black.

An information was filed charging the appellant with capital murder for the shooting death of Richard Campbell, and attempted capital murder for the shooting of Thomas Bryan. The trial began on April 20, 1992, and the death penalty was requested by the State. Franklin at this time was age 17. Before *voir dire* began, the appellant's attorney asked the circuit court to sensitize the jury to the fact that Franklin was black and the victims were white. The court refused the request stating that it thought that the request was "racist." The court went on to state that the appellant's attorney could "sensitize" the jury but that the court was not going to do this.

Prospective juror Ms. Georgia Davis was asked on *voir dire*

if she could consider imposing the death penalty to which she responded "I guess." She was the fifth juror called and the first black juror. Subsequently, when asked if she could impose the death penalty on this defendant Ms. Davis responded, "I don't know" and "It would be hard." When asked if she could put her name on a verdict form that imposed the death sentence Ms. Davis stated, "I'd have to think about it." Ms. Davis said she was able to sign the verdict form in a theft case but that it was "heavy on my heart."

Following this *voir dire*, the State excused Ms. Davis by peremptory challenge. The defense made a *Batson* motion and argued that Ms. Davis had not expressed any more caution with regard to whether she could impose the death penalty than the other potential jurors who had been accepted by the State had. The circuit court took the motion under advisement. The defense did not object to the court's action at this time. After noon on the first day of trial, the court still had not ruled on the *Batson* motion and instructed Ms. Davis to return to court the next day. Again, there was no objection by the defense.

Prospective juror Melva Hicks said on *voir dire* that she believed in an "eye for an eye" but that she could consider both life without parole and the death penalty. Ms. Hicks stated that she would tend to think a defendant was guilty if he chose not to testify. The defense made a motion for cause on the basis that Ms. Hicks was predisposed to the death penalty. The court denied the motion. The defense then made a motion for cause on the basis that Ms. Hicks would tend to think the defendant is guilty if he did not testify. The court granted this motion.

Prospective juror Paul Daniel, the pastor at the First Baptist Church in North Little Rock, stated on *voir dire* that it would be difficult but that he could consider the death penalty. Daniel indicated that he would have a problem imposing the law if it conflicted with his religious beliefs but that he would apply the law he was instructed. The defense moved the court to strike Daniel for cause, contending that he indicated that he would not abandon his religious beliefs if they conflicted with the law. The State argued that the pastor had expressed just the opposite. The court denied the motion. The defense used one of its peremptory strikes to remove Daniel.

The second day of trial, the defense asked the court if it would make a ruling on the *Batson* motion relating to Ms. Davis. The defense argued that the delay had forced the appellant to accept at least one juror he did not want and to use up one peremptory challenge. The court countered that the defense wanted Ms. Davis and therefore that it did not think the delay was a disadvantage. The court added that it had not reached a decision on the *Batson* motion.

The appellant asked the court if it would grant him two more peremptory strikes. The court responded that the request was premature. Later during *voir dire*, Franklin renewed his request for two additional peremptory strikes. The State objected stating that there was no authority for granting additional strikes. The circuit court denied the request.

Potential juror Nellie Hindman stated during *voir dire* that she could consider the death penalty or life without parole. Ms. Hindman was the junior high school teacher of one of the deputy prosecutors in the case. She stated that she had not seen him since junior high school, and that her prior contact with the deputy prosecutor would not affect her ability to be a disinterested juror in this case. Franklin, who had exhausted his peremptory strikes, moved to strike her for cause and stated that if he had had a peremptory challenge left, he would have used it. He asked again for additional peremptory challenges. The court denied the motion for cause and the motion for more challenges. At this time, Franklin inquired once more about the status of his *Batson* motion relating to Ms. Davis and was again told that it was under consideration.

Following *voir dire* of a potential juror, Wendell Brown, the appellant stated that he would have struck Brown if he had had a peremptory challenge left. The defense did not challenge Brown for cause. Franklin again requested two additional peremptory strikes, and the request was again denied.

The circuit court asked for arguments on the *Batson* motion involving Ms. Davis. The State argued that a prima facie case had not been established. Even assuming that it had, the State argued that the challenge was racially neutral in that it was based on the fact that Ms. Davis stated that she had real hesitation about the death penalty and that the State had struck white jurors for

expressing less hesitation than Ms. Davis expressed. The circuit court ruled that the defense had not made a prima facie case and that, in any event, the challenge was not racially motivated.

The trial proceeded. According to Franklin, the jury was all white, and the State does not dispute this. During Franklin's case, he testified on cross examination about his experience at the North Little Rock Police Station:

> PROSECUTOR: They wouldn't let you talk?
>
> FRANKLIN: No.
>
> PROSECUTOR: They didn't want to talk to you?

Defense counsel objected and sought a mistrial, arguing that this line of questioning was a comment on the appellant's decision not to give the police a statement. The court overruled the objection, stating that the comment was that the police did not want to talk to Franklin, not that Franklin had refused to give a statement.

The jury was instructed on capital murder and first degree murder. The defense sought instructions on the lesser offenses of second degree murder and manslaughter. The State objected on the basis that the appellant was claiming that he did not do it and the instructions were, therefore, not apposite. The court refused to give the instructions. Guilt was determined and after the penalty phase, Franklin was sentenced to life without parole plus thirty years in prison and a fine of $15,000.

## I. GENERAL COMMENT

This is a capital murder case where the appellant received a sentence of life without parole. The record before us is over 1,700 pages. The appellant raises seven points for reversal, four of which concern *voir dire*. Yet, he abstracts only one page of *voir dire* colloquy. Indeed, his abstract of the trial totals only 17 pages.

The State has filed a 222 page supplemental abstract in an effort to salvage this appeal. We underscore the obvious which is that the State is the opposing party to the appellant. Had the State moved for compliance with Ark. Sup. Ct. R. 4-3(h), we would have granted the motion to direct compliance and sent the case back for abstracting. We have done so recently on two motions filed by the State. *See State* v. *Wedger*, CR 93-408

(granted September 13, 1993); *State* v. *Early*, CR 93-189 (granted September 13, 1993).

## II. JURISDICTION

The State contests jurisdiction of this appeal in this court owing to a defective notice of appeal. The appellant filed his notice of appeal on April 24, 1992. The judgment was not entered until April 27, 1992.

At the time of the filing of the notice and judgment in April 1992, the law on this point had been decided in *State* v. *Joshua*, 307 Ark. 79, 818 S.W.2d 249 (1991). There, we held that a notice of appeal filed prior to entry of judgment was to be treated as if filed when the judgment was entered. In *Joshua*, the notice and judgment were filed on the same date, but we adduced additional authority in that case that the same rule applies when the notice is filed some days earlier. *Edmonds* v. *State*, 282 Ark. 79, 665 S.W.2d 882 (1984); *Caskey* v. *Pickett*, 272 Ark. 521, 615 S.W.2d 359 (1981). It was not until July 13, 1992, that we overruled the *Joshua* decision, thereby requiring the notice to follow entry of judgment. *See Kelly* v. *Kelly*, 310 Ark. 244, 835 S.W.2d 869 (1992).

Accordingly, Franklin's notice of appeal was timely under the pertinent caselaw at that time. No motion for belated appeal by the appellant was required by this court in *State* v. *Joshua, supra; Edmonds* v. *State, supra; Caskey* v. *State, supra*, in order to reach the jurisdictional question. In *Joshua*, for example, the appellee simply raised the issue in the brief. Nor is a belated appeal motion required under the facts of this case. Only after the repeal of *State* v. *Joshua, supra*, on this point did a motion for belated appeal become essential. Jurisdiction appropriately lies in this court.

## III. BATSON MOTION

Franklin first argues that the circuit court erred in not ruling immediately on his motion pursuant to *Batson* v. *Kentucky*, 476 U.S. 79 (1986), and that the delay evidences the fact that the court did not meaningfully consider his motion. The appellant also claims that the delay in ruling was prejudicial to him because it prevented him from making informed choices during the

remainder of *voir dire*, since he did not know whether Ms. Davis had been successfully challenged. Finally, he argues that he was forced to accept juror Nellie Hindman because he was out of peremptory strikes and suggests that the delay in ruling on the *Batson* motion caused him to exhaust his peremptory challenges prematurely.

We first consider the State's argument that Franklin was late in objecting to the circuit court's decision to take the *Batson* motion under advisement. This court has repeatedly held that a defendant in a criminal case must make an objection to the trial court at the first opportunity. *Asher* v. *State*, 303 Ark. 202, 795 S.W.2d 350 (1990), *cert. denied*, 111 S. Ct. 757 (1991); *see also Pacee* v. *State*, 306 Ark. 563, 816 S.W.2d 856 (1991). The objection which the State contends was late was not to a *Batson* motion *per se* but to the delay in ruling on the motion until the following day. We cannot say that Franklin's objection was untimely. Once he determined that the delay was impinging upon his *voir dire* strategy, the objection was lodged. This was appropriate, and we will address the merits of this issue.

There are two facets to Franklin's *Batson* argument: the first is that no racially neutral reason existed for striking Ms. Davis and, secondly, the delay in ruling prejudiced him. The appellant's argument fails on both counts.

This court has recently examined the law applicable to *Batson* challenges and the appropriate procedure to be followed. First, the defendant must make a prima facie case that racial discrimination is the basis of a juror challenge. In the event the defendant makes a prima facie case, the State has the burden of showing that the challenge was not based upon race. Only if the defendant makes a prima facie case *and* the State fails to give a racially neutral reason for the challenge is the court required to conduct a sensitive inquiry. *Tucker* v. *State*, 313 Ark. 624, 855 S.W.2d 948 (1993); *Hollamon* v. *State*, 312 Ark. 48, 846 S.W.2d 663 (1993); *Walker* v. *State*, 308 Ark. 498, 825 S.W.2d 822 (1992); *Colbert* v. *State*, 304 Ark. 250, 801 S.W.2d 643 (1990).

We disagree with the circuit court which concluded that Franklin failed to make a prima facie case. The first black juror called was challenged by the State in a case fraught with racial overtones. Moreover, by the time that the court ruled on the

motion the jury apparently was all white. Under the totality of relevant facts, we conclude that a racially neutral explanation from the State was required. Here, the State satisfied that obligation. The State argued that Ms. Davis was struck because she was not certain that she would be able to consider the full range of punishment. This challenge is plainly not grounded in racial discrimination. Further support for this conclusion is the fact that the State also peremptorily challenged juror Ms. Mary Schlatterer, a white female, and four other white jurors who were as uncertain or less uncertain than Ms. Davis about assessing the death penalty against Franklin. Reluctance to assess a statutory punishment, irrespective of race, is a reasonable basis for a challenge. *Williams* v. *State*, 288 Ark. 444, 705 S.W.2d 888 (1986). The State satisfied its burden in this respect.

■ On the issue of the court's delay in ruling on the *Batson* motion, we do not concur with the appellant that prejudice under these circumstances is presumed or even that there was a reasonable possibility of prejudice resulting in this case. *See Larimore* v. *State*, 309 Ark. 414, 833 S.W.2d 358 (1992); *Smith* v. *State*, 307 Ark. 223, 818 S.W.2d 945 (1991). To be sure, Franklin did not know whether Ms. Davis would sit and had to employ a *voir dire* strategy premised on a denial of his motion. But this is precisely what the circuit court did — deny his motion. If the court had permitted Ms. Davis to sit and Franklin had exhausted his challenges unnecessarily on the theory that the court would not allow her to sit, we could see some merit in his contention. But this did not occur. While we agree that the circuit court should not have delayed its ruling, resulting prejudice was lacking. Any error was, therefore, harmless.

## IV. RACIAL INQUIRY TO VENIRE

Franklin argues that this is a capital murder case with a black defendant and white victims. Because this was a racially sensitive case, the circuit court, according to the appellant, was required to inquire into racial bias on the part of the venire. He cites the Supreme Court case of *Turner* v. *Murray*, 476 U.S. 28 (1986) in support of this proposition.

■ In *Turner*, a black defendant received the death penalty in a Virginia state court for the murder of a jewelry store proprietor who was white. Defense counsel at trial submitted a list

of proposed questions to the trial judge including a question about racial prejudice. The judge refused to ask the question relating to racial bias. The Virginia Supreme Court affirmed, and subsequently a Federal District Court in Virginia denied the defendant habeas corpus relief and the Fourth Circuit Court of Appeals affirmed. The United States Supreme Court reversed on the basis that a violent crime between the races was involved, and the defendant was charged with a capital crime. Because the jury was required to consider a capital sentence in a case involving race, questioning the venire on racial prejudice was constitutionally required upon request.

In a dissent in *Turner*, Justice Powell pointed out that Virginia law vested the trial judge with responsibility to conduct *voir dire* of prospective jurors. In this case, the trial judge permitted counsel to propose questions but denied an inquiry into racial prejudice. Those facts distinguish *Turner* from the case before us. In Arkansas, counsel are permitted to conduct *voir dire* examination of jurors and in this matter, though the circuit court refused to inquire into racial bias, it permitted counsel for Franklin to do so and he did. Franklin's defense counsel posed questions to at least two prospective jurors about friendships with persons of another race, whether they believed that young blacks routinely engaged in criminal activity, whether young blacks intimidated members of the venire, whether race would be a factor in assessing punishment and so forth. In light of this, though the circuit court did not conduct the probe, we observe no violation of the constitutional protection afforded in *Turner v. Murray, supra*.

Franklin also contends on this point that his questioning was stifled by the circuit court. Though the court did urge defense counsel to move along with the questioning, the record does not bear out this assertion. In addition, Franklin lodged no objection to any perceived curtailment of his right to inquire, and the matter is not preserved for our review. *Barnes v. State*, 294 Ark. 369, 742 S.W.2d 925 (1988).

## V. FOR CAUSE CHALLENGES

Franklin next contends that the circuit court erred in failing to strike Ms. Melva Hicks,[1] Rev. Paul Daniel, and Ms. Nellie Hindman for cause. This argument has no merit.

Initially, we have held that a claim of error relating to a challenge for cause is only preserved regarding jurors who actually sat on the jury after a challenge for cause was denied. *See Pickens* v. *State*, 301 Ark. 244, 783 S.W.2d 341 (1990), *cert. denied*, 497 U.S. 1011 (1990), *citing Ross* v. *Oklahoma*, 487 U.S. 81 (1988). Only one potential juror — Ms. Hindman — was seated after Franklin's peremptory strikes were fully utilized and a challenge for cause was unsuccessful. We agree with the circuit court that Ms. Hindman's answers did not render her unfit to serve on the jury. It is true that she had taught one of the deputy prosecutors in junior high school, but she had not seen him since that time, and she advised the court that it would have no bearing on her decision in this case.

In Arkansas, we presume people comprising the venire are unbiased and qualified to serve. *Fleming* v. *State*, 284 Ark. 307, 681 S.W.2d 390 (1984). The burden is on the contestant to prove otherwise, and we will not disturb a circuit court's ruling absent an abuse of discretion. *Id; Butler* v. *State*, 303 Ark. 380, 797 S.W.2d 438 (1990). We cannot say, based on what has been presented to us, that that discretion was abused in this instance.

## VI. OTHER ARGUMENTS

Franklin's remaining points are equally meritless. He argues that he was entitled to two peremptory challenges in addition to the twelve allotted him under Ark. Code Ann. § 16-33-305 (1987). This court has refused to expand the number of peremptory strikes assigned to a criminal defendant beyond twelve. *See, e.g., Ruiz* v. *State*, 299 Ark. 144, 772 S.W.2d 297 (1989). Franklin cites no authority and presents no cogent reason why we should reverse our position on this issue. We will not reach the merits of an issue presented in such a deficient manner. *Gardner* v. *State*, 296 Ark. 41, 754 S.W.2d 518 (1988); *Dixon* v.

---

[1] Franklin *successfully* challenged Ms. Hicks for cause.

*State*, 260 Ark. 857, 545 S.W.2d 606 (1977). We do note on this point that the circuit court did remove one juror, Homer Jordan, for cause toward the end of *voir dire* solely because Franklin had exhausted his peremptory challenges. The court stated:

> And I don't think he's disqualified. But I think we've come down to the twelfth juror in this case and the Defense is out of strikes. And he has a predisposition and I think it would be a little bit unfair for the Defense to have to live with him. I'm not sure I would even make them use one of their challenges for him. I think he's very honest with us. That's what we're back here for.
>
> I'll excuse him for cause, R.S.

Nor do we give credence to Franklin's argument that police officers violated his right to remain silent by the prosecutor's question: "They didn't want to talk to you?" As the circuit court pointed out, the officers refused to talk to him, which had no bearing on whether Franklin would give a statement or not. There is no conceivable violation of constitutional protections such as those afforded by *Doyle* v. *Ohio*, 426 U.S. 610 (1976) under these circumstances.

The appellant also urges that lesser included instructions on second degree murder and manslaughter should have been given in addition to instructions on capital murder and first degree murder. His defense, however, is that he did not do it; not that he acted with less than purposeful intent. We agree that it makes no sense to instruct, at the defendant's request, on knowing or reckless conduct when he contends that someone else committed the crime. *Vickers* v. *State*, 313 Ark. 64, 852 S.W.2d 787 (1993); *Watson* v. *State*, 308 Ark. 444, 825 S.W.2d 569 (1992); *Doby* v. *State*, 290 Ark. 408, 720 S.W.2d 694 (1986). On this same point, Franklin argues for the first time on appeal that this rule favors a defendant who does not testify over one who does. This argument was not made to the circuit court. We will not address an argument which was not presented to the trial court for consideration. *Friar* v. *State*, 313 Ark. 253, 854 S.W.2d 318 (1993); *Walker* v. *State*, 301 Ark. 218, 783 S.W.2d 44 (1990).

For his final point, Franklin asserts cumulative error by the circuit court. He cites a biased attitude and demeanor of

the circuit court against him from the outset which resulted in "a dark cloud" being placed on his trial. While this court has recognized cumulative error (*Dillon* v. *State*, 311 Ark. 529, 843 S.W.2d 316 (1993)), defense counsel presents us with no specific examples of bias in his brief. Rather, he directs us obliquely to pages in the record.

The record in this case has been examined in accordance with Ark. Sup. Ct. R. 4-3(h) for any error prejudicial to Franklin since this is a case of life imprisonment without parole. Sharp exchanges were found between the circuit court and defense counsel during *voir dire*, most of which occurred outside of the presence of the jury. We have found some examples of sarcasm, snide remarks, and discourtesy on the part of the trial judge, as well as defense counsel. No matter how fevered a jury trial becomes, we cannot condone such conduct and do not do so in this case. Franklin, however, failed to object to this conduct or make a record or ask the judge to recuse. Absent an objection below the issue of bias may not be raised on appeal. *Maxwell* v. *State*, 298 Ark. 329, 767 S.W.2d 303 (1989). Furthermore, we cannot say that the cumulative conduct by the circuit court denied the appellant a fair trial or rises to the level of reversible error. Nor do we find other error requiring reversal.

Affirmed.