Ollis X. HEARD *v.* STATE of Arkansas

CR 95-445                 910 S.W.2d 663

Supreme Court of Arkansas
Opinion delivered November 20, 1995

554

*Bryant & Henry*, by: *Craig L. Henry*, for appellant.

*Winston Bryant*, Att'y Gen., by: *Vada Berger*, Asst. Att'y Gen., for appellee.

ANDREE LAYTON ROAF, Justice. Appellant Ollis X. Heard was convicted of delivery of a controlled substance, two rocks of crack cocaine, and sentenced as an habitual offender to seventy years imprisonment. On appeal he argues that the trial court erred in 1) denying his motion for directed verdict based on insufficiency of the evidence, 2) ruling that his *Batson* motion based on the state's peremptory challenge of one black juror was untimely, 3) failing to require the state to provide racially neutral reasons for the peremptory challenge of the black juror, and 4) failing to grant a mistrial when the state improperly introduced evidence of a prior extraneous offense. We affirm the conviction.

Officer Willie Pegues of the Hot Springs Police Department testified that while he was working with the Texarkana Police Department as an undercover agent on the evening December 6, 1990, he observed Ollis Heard and Michael Chappell leaving a Texarkana club. Pegues testified that when he called Heard over to his car and asked him about some "rocks," Heard pointed to

Chappell and stated "that was his man." Chappell approached Heard and stated "he needed some more." Chappell and Heard walked towards a van, and Pegues observed Heard "take something out of his pocket and give it to Chappell." Chappell returned to Pegues' vehicle with five rocks in his hand. Officer Pegues testified that, after he witnessed Heard hand something to Chappell, Chappell walked to Pegues' vehicle without putting his hand in his pocket. Pegues selected two rocks and paid Chappell $40.00. Chappell then walked back to Heard, and Pegues observed Chappell hand Heard "something green," which he determined to be money. The two rocks purchased by Pegues were analyzed and found to contain cocaine base.

Appellant first argues that the trial court erred in denying his motion for directed verdict based on insufficient evidence. At the conclusion of the state's case, appellant moved for a directed verdict on the basis that there had been no evidence that he either transported or delivered a controlled substance to another party or that he had received any money or anything of value in exchange for such a delivery. The trial court denied the motion. Appellant presented the testimony of Chappell, who denied that he had sold drugs for appellant. Appellant renewed his motion for directed verdict; the trial court again denied the motion. The state then moved to introduce several exhibits from Chappell's case file through an employee of the prosecutor's office, stating:

> Judge, *probably not even in rebuttal*, but I guess since the Defendant has rested, the State *would offer in rebuttal* the exhibits that we talked to you about that we want to do for a limited purpose and I think I will probably call Wanda Winchester up to testify for the State outside the presence of the jury.

(Emphasis added.) Appellant objected to the introduction of the exhibits and to the testimony of the witness on several grounds, including the failure of the state to provide the exhibits and the identity of the witness during discovery. The state responded, "*Rebuttal evidence* . . . not required to expose that during discovery." (Emphasis added.) The trial court overruled the appellant's objection, and the state called its witness, who then testified and was cross-examined by appellant's counsel concerning the state's exhibits. Appellant objected to the introduction of the

exhibits; the trial court admitted one exhibit and sustained appellant's objection to the four remaining exhibits. The appellant did not make any further motion for directed verdict after the close of the state's rebuttal.

█ As Heard failed to renew his motion for directed verdict after the rebuttal testimony presented by the state, he is precluded from challenging the sufficiency of the evidence on appeal. *See Christian* v. *State*, 318 Ark. 813, 889 S.W.2d 717 (1994). The failure of a defendant to move for a directed verdict at the close of the case waives any question pertaining to the sufficiency of the evidence. *Id.*; Ark. R. Crim. P. 36.21(b). We have concluded that the plain language of the rule requires a renewal after rebuttal evidence is presented, and we interpret the rule strictly. *Christian, supra.*

█ Appellant contends the state did not present "rebuttal" evidence because the state had either forgotten to introduce the exhibit during Chappell's testimony or wanted to introduce it out of the hearing of the jury. Appellant further argued the exhibit admitted had "little, if any, relevance to the issue of whether there was sufficient evidence to convict Appellant of the offense of delivery of a controlled substance." Clearly, the exhibit was evidence and it was admitted after Heard had rested his case. Thus, appellant did not renew his motion for directed verdict "at the close of the case," and we do not reach the merits of his argument.

Appellant next argues the trial court erred in ruling that his *Batson* challenge was untimely and in failing to require the prosecutor to provide racially neutral reasons for the exercise of a peremptory challenge against a black juror. There were two blacks on the jury panel. The prosecution used its only peremptory challenge to strike one and the other was seated as a juror. At the conclusion of voir dire, but prior to the jury being sworn, appellant's counsel requested that the record reflect that Heard is a black male and the state exercised a peremptory challenge against a black female. He requested that the state provide a racially neutral reason as to why a peremptory challenge was exercised against the black juror. The trial judge denied the motion as untimely and further stated he was "convinced that the state did not systematically exclude blacks as the very next juror was of the black race and was accepted by the state as a member of this jury."

■ In *Pacee* v. *State*, 306 Ark. 563, 816 S.W.2d 856 (1991), we discussed objections made pursuant to *Batson* v. *Kentucky*, 476 U.S. 79 (1986), and stated that "[s]o long as the objection is made before the jury is sworn, we regard it as timely." As Heard objected prior to the jury being sworn, his *Batson* challenge was timely.

■■ In *Sims* v. *State*, 320 Ark. 528, 900 S.W.2d 508 (1995), we recently set out the procedures which are to be followed when a *Batson* objection is raised:

> First, the defendant must make a prima facie case that racial discrimination is the basis of a juror challenge. In the event the defendant makes a prima facie case, the state has the burden of showing that the challenge was not based on race. Only if the defendant makes a prima facie case and the state fails to give a facially neutral reason for the challenge is the court required to conduct a sensitive inquiry.

(Quoting *Franklin* v. *State*, 314 Ark. 329, 863 S.W.2d 268 (1993).) We have stated a prima facie case may be established by: (1) showing that the totality of the relevant facts gives rise to an inference of discriminatory purpose, (2) demonstrating total or seriously disproportionate exclusion of blacks from the jury, or (3) showing a pattern of strikes, questions or statements by a prosecuting attorney during voir dire. *Gilland* v. *State*, 318 Ark. 72, 883 S.W.2d 474 (1994). The standard of review for reversal of a trial court's *Batson* ruling is whether the court's findings are clearly against the preponderance of the evidence. *Sims* v. *State, supra.*

■ Although the trial judge incorrectly concluded Heard's motion was untimely, he went on to state that he was "convinced that the state did not systematically exclude blacks as the very next juror was of the black race and was accepted by the state as a member of this jury." In *Thompson* v. *State*, 301 Ark. 488, 785 S.W.2d 29 (1990), we concluded that the presence of minority members on the jury, while by no means determinative of the question of whether discrimination occurred, is significant. Further, we have commented that the best answer the state can have to a charge of discrimination is to be able to point to a jury which has some black members. *Gilland* v. *State, supra; Ward* v. *State*, 293 Ark. 88, 733 S.W.2d 728 (1987).

Here, the state's sole peremptory challenge was exercised to excuse a black juror; however, the very next juror was also a black woman and was accepted by the state. Furthermore, when this juror was seated, the state still had peremptory challenges remaining. *See Thompson v. State*, 301 Ark. 488, 785 S.W.2d 29 (1990).

We hold the appellant failed to make a prima facie case that racial discrimination was the basis of the juror challenge. Granted, the prosecution's use of a peremptory challenge to remove *the only* black prospective juror may establish a prima facie case. *See Mitchell v. State*, 295 Ark. 341, 750 S.W.2d 936 (1988). However, the one peremptory strike of a black prospective juror, with no additional facts or context in which it can be evaluated, is not sufficient. *See Acklin v. State,* 319 Ark. 363, 896 S.W.2d 423 (1995); *see also Bradley v. State*, 320 Ark. 100, 896 S.W.2d 425 (1995). Accordingly, the trial court's finding that there was no systematic exclusion is not clearly against the preponderance of the evidence.

Appellant finally argues the trial court erred in failing to grant a mistrial when the prosecutor improperly introduced evidence of a prior extraneous offense. Michael Chappell testified on behalf of the appellant and denied that he had ever sold or delivered cocaine for appellant. During the state's cross-examination of Chappell, the prosecutor asked, "Were y'all at the same penitentiary together?" Counsel for appellant objected and moved for a mistrial; Chappell did not answer the question. The state asserted it was simply asking how Chappell knew the defendant in order to establish that they had planned Chappell's testimony. The trial court denied the defendant's motion for mistrial and ordered the state to make no further reference to the witness knowing the defendant in the penitentiary.

On appeal, appellant asserts the state made a purposeful attempt to interject in the case that he was currently incarcerated on other convictions, the trial court did not admonish the jury, and the statement was "highly prejudicial." In reviewing the denial of motion for mistrial, among the factors we consider are whether the prosecutor deliberately induced a prejudicial response and whether an admonition to the jury could have cured any resulting prejudice. *Stanley v. State*, 317 Ark. 32, 875 S.W.2d 493 (1994).

▮▮▮▮ Any reference to a defendant's prior convictions during the guilt phase of a criminal trial results in some prejudice to the defendant. *Davis* v. *State*, 317 Ark. 592, 879 S.W.2d 439 (1994). Declaring a mistrial, however, is a drastic remedy and proper only where the error is beyond repair and cannot be corrected by any curative relief. *Cupples* v. *State*, 318 Ark. 28, 883 S.W.2d 458 (1994). The trial court should resort to mistrial only where the error complained of is so prejudicial that justice cannot be served by continuing the trial or when the fundamental fairness of the trial itself has been manifestly affected: the trial court has wide discretion in granting or denying a motion for a mistrial and its discretion will not be disturbed except where there is an abuse of discretion or manifest prejudice to the movant. *Stewart* v. *State*, 320 Ark. 75, 894 S.W.2d 930 (1995). The trial court is in a better position to determine the effect of the remark on the jury and here the court concluded the reference was insufficient to warrant a mistrial. *See Cupples* v. *State, supra.*

▮▮▮▮ Further, an admonition to the jury usually cures a prejudicial statement unless it is so patently inflammatory that justice could not be served by continuing the trial. *King* v. *State*, 317 Ark. 293, 877 S.W.2d 583 (1994). We have concluded that an admonition is sufficient to cure a reference a witness made to a defendant's "previous record." *Reel* v. *State*, 318 Ark. 565, 886 S.W.2d 615 (1994). Similarly, in the instant case, an admonition would have been sufficient to cure the error. The appellant failed to request this relief; however, it was clearly his obligation to ask for a curative instruction, and the failure to do so will not inure to his benefit on appeal. *Vick* v. *State*, 314 Ark. 618, 863 S.W.2d 820 (1993).

Affirmed.