## William C. MOORE *v.* STATE of Arkansas

CA CR 05-159                    215 S.W.3d 688

### Court of Appeals of Arkansas
Opinion delivered October 12, 2005

*Mac Golden PLLC,* by: *Mac Golden,* for appellant.

*Mike Beebe,* Att'y Gen., by: *Karen Virginia Wallace,* Ass't Att'y Gen., for appellee.

JOHN B. ROBBINS, Judge. Appellant William C. Moore was convicted by a jury of aggravated robbery and sentenced to twenty years in prison with five suspended. On appeal, his sole argument is that he was denied an impartial jury because the trial court denied his *Batson* challenge to the State's peremptory strike of a juror.

Mr. Moore is white, and during voir dire the State exercised a strike against a black venire person. The following exchange subsequently occurred:

> DEFENSE COUNSEL: Your Honor, Ms. Tillman is African-American and we would object to her being struck — we would object to her being struck. She is African-American.
>
> THE COURT: The defendant is not African-American.
>
> DEFENSE COUNSEL: I understand. My understanding is that a public right also of the defendant — he is entitled

to an unbiased trial from an unbiased jury, whatever his race is, so we would object to her being struck. We would inquire why the State wishes she be struck.

THE COURT: What does the State have to say?

PROSECUTOR: This is absurd. In every criminal case I've been involved in — the defense objects to this? It's absurd.

DEFENSE COUNSEL: We would make the same —

PROSECUTOR: I haven't struck any others. Personally, it's offensive.

DEFENSE COUNSEL: Your Honor, there is no personal intent intended in this case. I've known Mr. Shue for a number of years. I believe he is a very fair-minded person, but we nevertheless would make that objection. No personal offense intended.

THE COURT: First, I don't think it's applicable; it is not an African-American defendant. Secondly, I would point out there has already been at least one juror seated. Mr. Willis, who is African-American, that was seated without objection.

PROSECUTOR: We also have Ms. Wofford who was just seated, Your Honor. There's two African-Americans.[1]

THE COURT: And Ms. Wofford who has been seated. That makes two, so I don't think the State is required to set out a basis when the defendant is not African-American.

In *Batson v. Kentucky*, 476 U.S. 79 (1986), the Supreme Court held that the Equal Protection Clause of the Fourteenth Amendment prohibits the State from striking a venire

---

[1] The prosecutor's reference to the seating of Ms. Wofford as the second African American juror is a mistake, because Ms. Wofford was struck by Mr. Moore's counsel moments before this exchange took place. Nevertheless, it is evident that at least one African-American juror was seated prior to this peremptory challenge.

person as a result of racially discriminatory intent. In *Mackintrush v. State*, 334 Ark. 390, 397, 978 S.W.2d 293, 296 (1998), our supreme court outlined the proper steps for the trial court to follow when a *Batson* claim is made:

> (1) the opponent of a peremptory challenge must make a *prima facie* case of racial discrimination; (2) the proponent of the strike must come forward with a race-neutral explanation; and (3) the trial court must decide whether the opponent has proven purposeful racial discrimination.

As for the first-step analysis, the *Mackintrush* court stated:

> The strike's opponent must present facts, at this initial step, to raise an inference of purposeful discrimination. According to the *Batson* decision, that is done by showing (1) that the strike's opponent is a member of an identifiable racial group, (2) that the strike is part of a jury-selection process or pattern designed to discriminate, and (3) that the strike was used to exclude jurors because of their race. In deciding whether a *prima facie* case has been made, the trial court should consider all relevant circumstances. Should the trial court determine that a *prima facie* case has been made, the inquiry proceeds to Step Two. However, if the determination by the trial court is to the contrary, that ends the inquiry.

*Id.* at 398, 978 S.W.2d at 296.

For reversal of the trial court's action in this case, Mr. Moore argues that the trial court erred as a matter of law in ruling that he could not make a *Batson* challenge to a black juror because he himself was not black. Mr. Moore contends that the trial court was required to go through the three-step *Batson* process, and that its failure to do so constituted reversible error. Mr. Moore notes that in *Holder v. State*, 354 Ark. 364, 124 S.W.3d 439 (2003), the supreme court held that a *Batson* error is not subject to harmless-error analysis.

■ ■ Mr. Moore is indeed correct in asserting that a defendant has the right to object to race-based exclusions of jurors through peremptory challenges whether or not the defendant and excluded jurors share the same race. This was the holding in *Powers v. Ohio*, 499 U.S. 400 (1991), where the Supreme Court stated that although a defendant has no right to a jury composed in whole or part of persons of his own race, he does have the right to be tried

by a jury whose members are selected by nondiscriminatory criteria. The *Powers* court further stated that the Equal Protection Clause prohibits the State from using peremptory challenges to exclude otherwise qualified and unbiased jurors solely by reason of race, and that racial discrimination in jury selection casts doubt on the integrity of the judicial process, and places the fairness of the proceedings in doubt. Thus, it is clear that in the instant case Mr. Moore did have the constitutional right to bring a *Batson* challenge against the State's peremptory strike of Ms. Tillman, and the trial court erred in stating otherwise.

Notwithstanding the trial court's misunderstanding of the law, we nonetheless cannot conclude that any error was committed in permitting the State to strike Ms. Tillman. This is because Mr. Moore failed to make a *prima facie* case of racial discrimination. The prosecution's use of a peremptory challenge to remove the only black prospective juror *may* establish a *prima facie* case. *Cooper v. State*, 324 Ark. 135, 919 S.W.2d 205 (1996). However, one peremptory strike of a minority prospective juror, with no additional facts or context in which it can be evaluated, is not sufficient. *Id.*

When Mr. Moore made his *Batson* objection, he inquired as to why the State wished to strike the juror. However, because Mr. Moore offered no additional argument or facts outside of the strike itself, no *prima facie* case was made and therefore the State was not required to come forward with a race-neutral explanation. Clearly the State did not use a peremptory strike against the only black prospective juror because, as the trial court pointed out, there had already been at least one black juror seated without objection.

In *Jackson v. State*, 330 Ark. 126, 129, 954 S.W.2d 894, 895 (1997), the supreme court reviewed a *Batson* challenge and announced:

> The first of the three-step analysis above requires us to determine whether Jackson proved a prima facie case of discrimination which may be established by (1) showing that the totality of the relevant facts give rise to an inference of discriminatory purpose, (2) demonstrating total or seriously disproportional exclusion of blacks from the jury, or (3) showing a pattern of strikes, questions or statements by a prosecuting attorney during voir dire.

In affirming Mr. Jackson's conviction, the supreme court reasoned:

> In the present case, Jackson made no effort to show a dispro-
> portionate exclusion of blacks from the jury, nor did he show a
> pattern of strikes evidencing a discriminatory purpose. In fact, two
> black males were seated on the jury, and as this court has previously
> stated, the best answer the State can have to a charge of discrimina-
> tion is to point to a jury which has black members. In this respect,
> we also note that, while the State was entitled to ten peremptory
> challenges, it used only six. Additionally, Jackson presented no
> evidence that the prosecutor made any racial statements or asked any
> racial questions. In sum, Jackson failed to show a prima facie case.

*Id.* at 129-130, 954 S.W.2d at 895 (citations omitted).

■ As in *Jackson v. State, supra,* the appellant in the instant case failed to present any factors to carry his burden of making a *prima facie* case of discrimination. While the trial court was wrong in asserting that Mr. Moore could not make a *Batson* challenge because he did not share the same race as the struck juror, the result reached by the trial court was correct given that it is not even arguable that Mr. Moore made, or even attempted to make, a *prima facie* case as required by *Batson v. Kentucky, supra.* We will affirm the trial court if it reaches the right result for the wrong reason. *See Hagen v. State,* 315 Ark. 20, 864 S.W.2d 856 (1993); *Stewart v. State,* 59 Ark. App. 77, 953 S.W.2d 599 (1997); *Pyles v. State,* 55 Ark. App. 201, 935 S.W.2d 570 (1996).

In reaching our decision we emphasize that we are in no way holding that the existence of one black juror on the jury gives the State any right to strike another black venire person for a racially motivated reason. Rather, we simply hold that there was no evidence of any racial motivation in this case, and this fact was in part demonstrated by the State's failure to strike the prior African-American juror or jurors.

Affirmed.

HART, VAUGHT, and CRABTREE, JJ., agree.

GRIFFEN and NEAL, JJ., dissent.

WENDELL GRIFFEN, Judge, dissenting. The sole issue is whether the trial court properly overruled a white defendant's objection to the exclusion of a black juror during *voir dire*

without applying the procedure for analyzing race-based juror challenges that is mandated by *Batson v. Kentucky*, 476 U.S. 79 (1986), and *MacKintrush v. State*, 334 Ark. 390, 978 S.W.2d 293 (1998). I agree with the majority that the trial court erred in determining that a white defendant is not entitled to exercise a *Batson* challenge where the State uses a peremptory challenge to strike a black juror. *Powers v. Ohio*, 499 U.S. 400 (1991).

However, I would reverse the trial court's refusal to address the merits of the defendant's *Batson* objection. The mere fact that a black juror had already been seated did not disqualify the defendant from making a subsequent *Batson* objection. The majority opinion now compounds the trial court's error because the presence of a minority member on a jury, while significant, is not dispositive of the question of whether discrimination has occurred. *Heard v. State*, 322 Ark. 553, 910 S.W.2d 663 (1995). Further, the majority's reliance on *Jackson v. State*, 326 Ark. 126, 954 S.W.2d 894 (1997), implies that a defendant must present a *pattern* of discriminatory strikes in order to establish a *prima face* case under *Batson*. However, a defendant may also establish a *prima facie* case *under Batson* by showing a *process* designed to discriminate. *MacKintrush, supra*. To affirm here is to hold that no *Batson* analysis is required where a single black juror has been seated; essentially, the majority opinion advances the position that subsequent exclusion of any black member of the venire would be *prima facie* nondiscriminatory, that is would *never* be due to discriminatory intent. That position is absurd on its face. The majority's position also directly violates case law stating that exclusion of a single juror based on race violates equal protection. *Holder v. State*, 354 Ark. 364, 124 S.W.3d 439 (2003).

Clearly, the trial court was mistaken in thinking that two black jurors had been seated. In fact, only one had been seated. In any event, the fact that one black person had already been seated did not prevent any *remaining* member of the venire from being excluded for racially discriminatory reasons. Moreover, it has long been understood, at least until now, that the *Batson* inquiry also serves to protect the *excluded juror and* the integrity of the judicial system. In recognizing this extended protection, the *Batson* court stated:

> Racial discrimination in selection of jurors harms not only the accused. . . . The harm from discriminatory jury selection extends beyond that inflicted on the defendant and the excluded juror to

> touch the entire community. Selection procedures that purposefully exclude black persons from juries undermine public confidence in the fairness of our system of justice.

476 U.S. at 87-88.

The majority relies on *Cooper v. State*, 324 Ark. 135, 919 S.W.2d 205 (1996), for the unremarkable proposition that a single peremptory strike of a minority prospective juror, with no additional facts or context in which it can be evaluated, is not sufficient to establish a *prima facie* case under *Batson*. Further, the Arkansas Supreme Court has affirmed a trial court's finding that a defendant failed to make a *prima facie* case of discrimination under *Batson* where the State's sole peremptory challenge was exercised to excuse a black juror, and where the very next juror seated, who was black, was accepted by the State at a time when the State had peremptory challenges remaining. *Heard v. State, supra.* Plainly, *Cooper* and *Heard* are distinguishable because in neither of those cases was there any indication that the trial court was misinformed as to the number of black jurors seated, nor did the supreme court make the initial *Batson* determination after the trial court failed to do so.

Although the majority recognizes that a *Batson* error is not subject to harmless-error analysis, *Holder v. State, supra*, it proceeds to conduct, what, in essence, is a harmless-error analysis by accepting the State's argument that we may affirm because the trial court reached the right result for the wrong reason. I do not understand how we can conclude that the trial court reached the right result where it a) reasoned incorrectly and b) refused to rule on the *Batson* challenge because of its basic mistake. In effect, the majority has performed a *de novo review* and accepted an argument not made at trial by the *Batson* opponent, and now concludes, for the first time, that the *Batson* proponent failed to be persuasive.

Clearly, the majority here has done what the *trial judge* in *Cooper, supra*, and *Heard, supra*, did: it has examined the facts in the case and made an initial *Batson* ruling. The majority states that "because Mr. Moore offered no additional argument or facts outside of the strike itself, no *prima facie* case was made." The majority further states that "the result reached by the trial court was correct given that it is not even arguable that Mr. Moore made or even attempted to make, a *prima facie* case" of discrimination under *Batson*. Yet, the majority cites to no authority that allows us to perform a *de novo* review and make the initial *Batson* determi-

nation for the first time on appeal where the trial court erroneously declared that the defendant had no right to assert a *Batson* objection in the first instance.

Perhaps the trial court's comments could be affirmable as a determination regarding the defendant's *prima facie* case if the record showed that the court recognized that a *Batson* challenge had been asserted and actually ruled on the merits of that challenge. However, the trial court believed that the *Batson* analysis was not applicable at all, insofar as the challenged venireperson was concerned. The record plainly shows that the trial judge struck a black venireperson, upon a peremptory challenge by the State, because the trial judge believed the defendant could not assert any *Batson* challenge. Thus, there is no justification for affirming as if the trial court made a ruling on the *Batson* challenge.

In the face of undeniable history of race discrimination in jury selection that *Batson* purports to address, it is disquieting that the judicial process is now being used, under the guise of appellate review, to sanction what the sanctioning judges acknowledge as judicial error. I refuse to validate the wrongful consequence of the trial court's error. Accordingly, I would reverse this case and remand for a new trial. I am authorized to state that Judge Neal joins in this opinion.